## MOORE *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF TEXAS.

No. 789. Submitted October 20, 1893. — Decided October 30, 1893.

When the tendency of testimony offered in a criminal case is to throw light upon a particular fact, or to explain the conduct of a particular person, there is a certain discretion on the part of the trial judge which a court of errors will not interfere with, unless it manifestly appears that the testimony has no legitimate bearing upon the question at issue, and is calculated to prejudice the accused in the minds of the jurors.

When a necessity arises for a resort to circumstantial evidence in a criminal trial, objections on the ground of relevancy are not favored, as the effect of circumstantial facts depends upon their connection with each other, and considerable latitude is allowed on the question of motive.

The fact that such testimony also has a tendency to show that the defendant was guilty of the alleged offence is not sufficient reason for its exclusion, if otherwise competent.

Acting on these principles, the court sustains the ruling of the court below admitting testimony stated at length in the opinion, to show a motive for the alleged murder.

An exception to the denial of a motion for a new trial on the ground that the verdict was not supported by the evidence is untenable under repeated rulings of this court.

THIS was a writ of error upon the conviction of the plaintiff in error for the murder of Charles Palmer, on July 25, 1889, in Blue County, Indian Territory. Nelson Moore, defendant's brother, was indicted with him, but was not tried.

Upon the trial of the case, after the witnesses of the government had shown that Charles Palmer, the person alleged to have been murdered by the defendant, was found on the 25th day of May, 1889, the evidence further showing that he had been murdered by some person or persons, the United States attorney proposed to prove that one Camp had disappeared from the same neighborhood during the month of November, 1888, and had not been heard from since; that he was last seen in company with defendant and his brother, Nelson Moore; that Palmer had been trying to find Camp's body, and that defendant knew that he had been investigating Camp's disappearance. Concerning which the testimony of the proposed witness, Kitty Young, formerly Mrs. Palmer, relative to said Camp, was substantially as follows:

"Tom Moore, Nelse Moore, and Mr. Camp kept batch and lived together about ¼ of a mile from my husband, Charles Palmer. About 9 o'clock at night during the month of November, 1888, Nelse Moore and Mr. Camp was at our house to borrow a horse from my husband to drive the next day to a wagon, stating they were going to Caddo. They did not get the horse. Mr. Palmer and myself promised Mr. Camp we would go down to the house and milk his cows while he was gone. Soon after they left on foot that night I heard a gun in the direction of their house. About 1 o'clock A.M. I saw Mr. Camp's wagon and horses pass our house coming from the direction of where they lived. Immediately after breakfast Mr. Palmer and myself went down to the Moores' house to milk the cows. There was no one there. We saw blood in the house and everything torn up around in the house. We saw a fresh horse wagon tracks which led down into the bottom. We followed it some distance and noticed where it returned by a different road and came into the road which passes our house. About five days after this Nelse Moore returned alone with the team and wagon that belonged to Camp. He was wearing Camp's boots. The defendant and Nelse claimed Camp's clothes, horses, watch, wagon, cows, and all the property which Camp had. I have never seen or heard of Camp since the night referred to.

"Mr. Palmer was down in the woods hog hunting on Thursday before he was killed. When he returned that evening Tom Moore asked him where he had been. Mr. Palmer stated that he had been in the bottom hog hunting. Tom Moore said, 'Yes, I know the kind of hogs you were looking for.'.

"Tom and Nelse Moore owned no stock or property. Tom had no money. Mr. Palmer had been furnishing him provisions. Tom had been hired to Mr. Palmer, was familiar with the premises. Had been clearing land for Mr. Palmer on the place we lived on. The defendants claimed to have bought all Camp's property."

The court admitted this testimony to show, not that Camp had been killed by defendant, but as a motive for his alleged murder of Palmer. To this the defendant excepted upon the ground that the testimony had a direct tendency to prejudice the minds of the jurors.

The only other error alleged was to the refusal of the court to grant a new trial upon the ground that the verdict "was not supported by that amount and character of evidence that is required by law."

No appearance for plaintiff in error.

*Mr. Assistant Attorney General Whitney* for defendants in error.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

The testimony on behalf of the prosecution tended to show that Charles Palmer, who had been seen alive about 12 o'clock, was found lying dead in the road in Sandy Creek bottom, about two miles from his home, at 4 o'clock of the same day. About three or four hundred yards from where the body was found, the defendant, Tom Moore, was seen by two witnesses about 2 or 3 o'clock of the same day, coming toward them and carrying a Winchester gun. When he saw them he turned off

at a fast walk out of sight. The wounds in Palmer's body were made with a Winchester gun or a pistol. Defendant was a person of no means, living with his brother, Nelson Moore, about a quarter of a mile from Palmer's, for whom he had been at work, clearing his land. Palmer's land was rented from an Indian. This land was also claimed by a full-blooded Choctaw woman named Lizzie Lishtubbi. Four days before the murder defendant Moore married this woman. He had previously boasted that he was going to marry the woman and get the land; " that she was old and would not live long, and he would get a good stake." One of the witnesses told him that he would have trouble over it, as Charles Palmer was about the gamiest man in the Territory. He replied: " I am some that way myself." As he started to leave, he said : " I may not get to marry the widow; and if I do not, if you give me away, I will kill you." But the witness thought it merely a good-natured remark, as he was laughing at the time.

We think it was within the discretion of the court to admit the testimony in dispute of Kitty Young. As intimated in the case of *Alexander* v. *United States*, 138 U. S. 353, where the question relates to the tendency of certain testimony to throw light upon a particular fact, or to explain the conduct of a particular person, there is a certain discretion on the part of the trial judge which a court of errors will not interfere with, unless it manifestly appear that the testimony has no legitimate bearing upon the question at issue, and is calculated to prejudice the accused in the minds of the jurors. There are many circumstances connected with a trial, the pertinency of which a judge who has listened to the testimony, and observed the conduct of the parties and witnesses, is better able to estimate the value of than an appellate court, which is confined in its examination to the very words of the witnesses, perhaps imperfectly taken down by the reporter. It was said by Mr. Justice Clifford, in delivering the opinion of this court in *Castle* v. *Bullard*, 23 How. 172, 187, that " whenever the necessity arises for a resort to circumstantial evidence, either from the nature of the inquiry or the failure of direct proof, objections to testimony on the ground of irrelevancy are not favored, for

the reason that the force and effect of circumstantial facts usually, and almost necessarily, depend upon their connection with each other." And in *Hendrickson* v. *People*, 10 N. Y. 13, 31, it is said that "considerable latitude is allowed on the question of motive. Just in proportion to the depravity of the mind would a motive be trifling and insignificant which might prompt the commission of a great crime. We can never say the motive was adequate to the offence; for human minds would differ in their ideas of adequacy, according to their own estimate of the enormity of crime, and a virtuous mind would find no motive sufficient to justify the felonious taking of human life." See also *Shailer* v. *Bumstead*, 99 Mass. 112, 130; *Commonwealth* v. *Coe*, 115 Mass. 481, 504; *Commonwealth* v. *Pomeroy*, 117 Mass. 143; *Murphy* v. *People*, 63 N. Y. 590, 594; *Kennedy* v. *People*, 39 N. Y. 245; *People* v. *Harris*, 136 N. Y. 423; *Commonwealth* v. *Abbott*, 130 Mass. 472.

Even conceding that the prosecution had shown a motive for the murder of Palmer in the fact that he was in possession of land to which defendant's wife also had a claim, the further facts that Palmer was known by the defendant to have been down in the bottom where Camp had been suspected of being murdered, taken in connection with the blood found at the house jointly occupied by himself and the Moores, the report of a gun heard in the direction of the house, the wagon tracks leading toward the bottom where he was thought to have been murdered, and the subsequent return of one of the Moores with Camp's team and clothes, and wearing his boots, were such as were calculated to excite defendant's suspicion that Palmer was there for the purpose of investigating the circumstances of Camp's death and his connection with it.

The fact that the testimony also had a tendency to show that defendant had been guilty of Camp's murder would not be sufficient to exclude it, if it were otherwise competent. 1 Greenl. Ev. § 3; *Farris* v. *People*, 129 Illinois, 521; *People* v. *Harris*, 136 N. Y. 423.

The exception to the denial of the motion for a new trial upon the ground that the verdict was not supported by the amount and character of evidence that is required by law, was

untenable under the repeated rulings of this court. *Crumpton* v. *United States*, 138 U. S. 361, 365; *Wilson* v. *Everett*, 139 U. S. 616, 621; *Van Stone* v. *Stillwell & Bierce Mfg. Co.*, 142 U. S. 128, 134.

There was no error in the rulings of the court below, and the judgment is, therefore,

*Affirmed.*