VAN GESNER v. UNITED STATES. BIGGS v. SAME. WILLIAMSON v. SAME.*

(Circuit Court of Appeals, Ninth Circuit. March 11, 1907.)

Nos. 1,369, 1,370, 1,368.

1. CRIMINAL LAW—REVIEW IN FEDERAL COURTS—ELECTION.

In a criminal case in a federal court which involves a constitutional question, after a judgment of conviction, the defendant is put to his election whether he will take the case direct to the Supreme Court of the United States on such question, or take the whole case to the Circuit Court of Appeals, and, where he elects the former, a writ of error subsequently taken out to the Circuit Court of Appeals will be dismissed.

2. PUBLIC LANDS—REGULATIONS OF LAND DEPARTMENT.

The Land Department of the United States has the power to make reasonable rules and regulations, not inconsistent with any valid law, for the purpose of giving effect to the provisions of the acts of Congress providing for the disposition of the public lands, which have the force and effect of law, and of which the courts take judicial notice.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, § 288.

Decisions of land department, their conclusiveness and effect, see note to Hartman v. Warren, 22 C. C. A. 38; Carson City Mining Co. v. North Star Mining Co., 28 C. C. A. 344; Unita Tunnel M. & T. Co. v. Creede & C. C. M. & M. Co., 57 C. C. A. 207.]

*Rehearing denied May 20, 1907.

3. PERJURY—PUBLIC LANDS—APPLICATION TO PURCHASE—TIMBER AND STONE ACT.

Under Timber & Stone Act June 3, 1878, § 1, c. 151, 20 Stat. 89 [U. S. Comp. St. 1901, p. 1545], which requires applicants to purchase land thereunder to file a verified written statement, and after the required publication of notice to "furnish to the register of the Land Office satisfactory evidence" of certain facts, the regulations of the Land Department, requiring such evidence to be in the form of depositions under oath, are in furtherance of the purposes of the statute and valid, and false swearing in either the preliminary statement or in such depositions constitutes the crime of perjury and an offense against the United States, under Rev. St. § 5392 [U. S. Comp. St. 1901, p. 3653].

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perjury, § 23.]

4. CONSPIRACY—SUBORNATION OF PERJURY—PUBLIC LANDS—INDICTMENT—AVERMENT OF WILLFULNESS.

Where the facts alleged, in an indictment for conspiracy to commit an offense against the United States by subornation of perjury in proceedings to acquire public lands, necessarily import willfulness on the part of the persons giving such testimony, the failure of the indictment to use the word itself is not fatal.

5. SAME—COMPETENCY OF EVIDENCE.

Under an indictment for conspiracy to commit an offense against the United States by subornation of perjury in procuring persons to make application for the purchase of lands under the timber and stone act, under agreements to convey the same to defendants, and to falsely swear, among other things, that such lands were chiefly valuable for timber, it was not error to permit the government to prove that the lands were not valuable for the timber upon them, but were chiefly valuable for grazing purposes, although such evidence tended to show that the lands were not subject to entry under the act.

6. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES—EVIDENCE OF MOTIVE.

An indictment for conspiracy to commit an offense against the United States by subornation of perjury charged that defendants procured and instigated a number of persons to make application for the purchase of public lands in a certain township under the timber and stone act, and to falsely swear in their applications and proofs that they were not seeking to purchase such lands on speculation, but for their own exclusive benefit and use, and that they had not made any contract or agreement by which the title would inure to the benefit of another; whereas, in truth and fact, such persons were applying to purchase the lands on speculation and under prior agreements to convey the title to defendants. Held, that under such indictment the motive of the parties to the transactions was a material fact to be proved, and that evidence that defendants had induced other persons to file on or purchase state lands in the same vicinity, which were subsequently conveyed to defendants, was properly admitted, where the jury were instructed to consider it only as bearing on such question of motive.

7. SAME.

Under such indictment, it was also competent for the government to show, by the persons who made such applications to purchase lands, that it was their intention and understanding at the time that the lands should be conveyed by them to defendants, contrary to their sworn statements and testimony.

In Error to the Circuit Court of the United States for the District of Oregon.

A. S. Bennett and H. S. Wilson, for plaintiffs in error.

Francis J. Heney, Sp. Asst. to Atty. Gen., and William C. Bristol, U. S. Atty., for the United States.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. These cases were tried and submitted together; the plaintiffs in error being jointly charged by indictment with the crime of conspiracy to suborn perjury, in violation of the provisions of section 5440 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3676]. In respect to the plaintiff in error Williamson, this statement is made in the brief of counsel for the plaintiffs in error, to wit:

"Prior to the writ of error in this case, the defendant Williamson, who was a representative in Congress, had sued out a writ of error to the Supreme Court of the United States, based upon the holding of that court, in the Burton Case, that a sentence of imprisonment against a member of Congress involved a constitutional question, giving the right of appeal direct to that court. At the time the writ of error was sued out in this case, the constitutional question in the Burton Case had never been decided. This writ of error to this court in the Williamson Case was sued out after the writ to the Supreme Court, and out of abundance of caution in case the writ to the United States Supreme Court should be dismissed upon jurisdictional grounds. The jurisdiction of this court, therefore, in the Williamson Case, depends upon whether the United States Supreme Court shall entertain jurisdiction thereof, and, if it holds that it has jurisdiction to pass upon the merits, then the proceedings in this court necessarily fail. If the Supreme Court should take jurisdiction in the Williamson Case, and pass upon the merits. its decision will necessarily be controlling in all these cases, as the record and questions presented (except the constitutional one) are identical."

Upon this statement of counsel for the plaintiff in error, we are of the opinion that the writ in respect to the plaintiff in error Williamson must be and hereby is dismissed. He was put to his election whether he would appeal from the judgment given against him directly to the Supreme Court upon the question of jurisdiction alone, or bring the whole case to this court, in which event this court could, if it deemed proper, certify the question of jurisdiction to the Supreme Court, or the case be taken there by that court by its writ of certiorari. Spreckels Sugar Refining Co. v. McClain, 192 U. S. 397–407, 24 Sup. Ct. 376, 48 L. Ed. 496; McLish v. Roff, 141 U. S. 661–667, 12 Sup. Ct. 118, 35 L. Ed. 893.

On behalf of the remaining plaintiffs in error, a number of points are made by counsel; the first going to the question of the sufficiency of the indictment.

It is a fundamental right of every defendant in a criminal case to insist that the indictment against him clearly charge an offense denounced by law, fairly inform him of the acts alleged to have been committed by him in violation of that law, and in a manner that will protect him in the event of a verdict of guilty, or acquittal, against any further prosecution for the same offense.

The statute under which the indictment in question is founded provides as follows:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to" a prescribed penalty. Rev. St. § 5440.

The statute is very broad, and includes any and every case where two or more persons conspire, either to commit an offense against the

United States, or to defraud the United States in any manner, or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy. In any and every such case, each and every party to the conspiracy is guilty of the crime denounced by the statute, the gist of which is conspiracy. "This offense," said the Supreme Court in United States v. Britton, 108 U. S. 199–204, 2 Sup. Ct. 531, 534 (27 L. Ed. 698), "does not consist of both the conspiracy and the acts done to effect the object of the conspiracy, but of the conspiracy alone. The provision of the statute, that there must be an act done to effect the object of the conspiracy, merely affords a locus penitentiæ, so that before the act done either one or all of the parties may abandon their design, and thus avoid the penalty prescribed by the statute. It follows, as a rule of criminal pleading, that, in an indictment for conspiracy under section 5440, the conspiracy must be sufficiently charged, and that it cannot be aided by the averments of acts done by one or more of the conspirators in furtherance of the object of the conspiracy."

The indictment in question undertakes to charge against the defendants thereto the commission of the particular acts bringing them within the provisions of this law. It charges that they, together with divers other persons to the grand jurors unknown, did, on the 30th day of June, 1902, at Prineville, Or., conspire, combine, confederate, and agree together to commit an offense against the United States. That is to say, to unlawfully, willfully, and corruptly suborn, instigate, and procure a large number of persons, to wit, 100 persons, to commit the offense of perjury in the said district (of Oregon) by taking their oaths there, respectively, before a competent officer and person in cases in which a law of the said United States authorized an oath to be administered, that they would declare and depose truly that certain declarations and depositions by them to be subscribed were true, and by thereupon, contrary to such oaths, stating and subscribing material matters contained in such declarations and depositions which they should not believe to be true. That is to say, to suborn, instigate, and procure the said persons, respectively, to come in person before him, the said Marion R. Biggs, who was then and there a United States commissioner for the said district of Oregon, and, after being duly sworn by and before him, the said Marion R. Biggs, as such United States commissioner, to state and subscribe under their oaths that certain public lands of the said United States, lying in Crook county, in said district of Oregon, open to entry and purchase under the acts of Congress, approved June 3, 1878, and August 4, 1892, and known as timber and stone lands, which those persons would then be applying to enter and purchase in the manner provided by law, were not being purchased by them on speculation, but were being purchased in good faith to be appropriated to the own exclusive use and benefit of those persons, respectively, and that they had not, directly or indirectly, made any agreement or contract in any way or manner, with any other person or persons whomsoever, by which the title which they might acquire from the said United States in and to such lands should inure in whole or in part to the benefit of any person, except

153 F.—4

themselves, when, in truth and in fact, as each of the said persons would then well know, and as they, the said John Newton Williamson, Van Gesner, and Marion R. Biggs, wou'd then well know, such persons would be applying to purchase such lands on speculation, and not in good faith to appropriate such lands to their own exclusive use and benefit, respectively, and would have made agreements and contracts with them, the said John Newton Williamson, Van Gesner, and Marion R. Biggs, by which the titles which they might acquire from the said United States in such lands would inure to the benefit of the said John Newton Williamson and Van Gesner, as copartners in the firm of Williamson & Van Gesner, then and before then engaged in the business of sheep raising in said country. The matters so to be stated, subscribed, and sworn by the said persons being material matters under the circums'ances, and matters which the said persons so to be suborned, instigated, and procured, and the said John Newton Williamson, Van Gesner, and Marion R. Biggs would not believe to be true; and the said Marion R. Biggs, United States commissioner, as aforesaid, when administering such oaths to those persons, being an officer and person authorized by law of the said United States to administer the same oaths; and the said oaths being oaths administered in cases where a law of the said United States would then authorize an oath to be administered.

The indictment further charges that, in pursuance of the said unlawful conspiracy, and to effect the object of the same, the said Marion R. Biggs afterwards, to wit, on the 30th day of June, 1902, at Prineville, Or., did unlawfully prepare a sworn statement in writing, for the signature of one Campbell A. Duncan, who was one of the persons who were to be suborned, instigated, and procured, as aforesaid; that is to say, a paper of the tenor following:

"Timber and Stone Lands—Sworn Statement.

"Land Office at The Dalles, Oregon, June 30th, 1902.

"I, Campbell A. Duncan, of Prineville, county of Crook, state of Oregon, desiring to avail myself of the provisions of the act of Congress of June 3, 1878, entitled 'An act for the sale of timber in the states of California, Oregon, Nevada and Washington Territory,' as extended to all the public land states by act of August 4, 1892, for the purchase of the S. 2 of N. E. 4 and S. 2 of N. W. 4 of section 14, township 15 S. of range 18 E. W. M., in the district of lands subject at The Dalles, Oregon, do solemnly swear that I am a native citizen of the United States, of the age of 34, and by occupation farmer; that I have personally examined said land, and from my personal knowledge state that said land is unfit for cultivation, and valuable chiefly for its timber; that it is uninhabited; that it contains no mining or other improvements * * * nor, as I verily believe, any valuable deposits of gold, silver, cinnabar, copper or coal; that the land contains no salt spring or deposit of salt in any form sufficient to render it valuable therefor; that I have made no other application under said act; that I do not apply to purchase the land above described on speculation, but in good faith to appropriate it to my own exclusive use and benefit; that I have not, directly or indirectly, made any agreement or contract in any way or manner, with any person or persons whomsoever, by which the title I may acquire from the government of the United States may inure in whole or in part to the benefit of any person except myself; and that my post office address is Prineville, Or.                    ———, Applicant.

"State of Oregon, County of Crook—ss.:

"——— do hereby certify that the foregoing affidavit was read to affiant in my presence before he signed his name thereto; that said affiant is to me personally known (or has been satisfactorily identified before me by ———), and

that I verily believe him to be the person he represents himself to be; and that this affidavit was subscribed and sworn to before me this ———— day of ————, 1902. ——————."

The indictment then charges that, in further pursuance of the said unlawful conspiracy, and to effect the object of the same, the said Marion R. Biggs afterwards, to wit, on the 30th day of June, 1902, at Prineville, Or., did unlawfully prepare a certain other sworn statement for the signature of one Susie M. Duncan, who was another one of the persons who were to be suborned, instigated, and procured as aforesaid; that is to say, the sworn statement required of the said Susie M. Duncan as an applicant to purchase public lands under the provisions of the said acts of Congress, similar to the sworn statement hereinbefore set forth according to its tenor, but referring to certain public lands known and described as the southwest quarter of section 14, in township 15 south, of range 18 east (reference being made to the Willamette meridian and bass line).

Similar alleged acts of the said Biggs in pursuance of the alleged unlawful conspiracy, and to effect the objects of the same, are charged in respect to various others of the 100 persons referred to in the indictment.

Section 1 of the Timber and Stone Act of June 3, 1878, c. 151, 20 Stat. 89 [U. S. Comp. St. 1901, p. 1545], provides:

"That surveyed public lands * * * valuable chiefly for timber, but unfit for cultivation, and which have not been offered at public sale according to law, may be sold * * * in quantities not exceeding 160 acres to any one * * * at the minimum price of two dollars and fifty cents per acre; and lands valuable chiefly for stone may be sold on similar terms as timber lands."

Section 2 of the act, so far as it is applicable to the present case, is as follows:

"Sec. 2. That any person desiring to avail himself of the provisions of this act shall file with the register of the proper district a written statement in duplicate, one of which is to be transmitted to the General Land Office, designating by legal subdivisions the particular tract of land he desires to purchase, setting forth that the same is unfit for cultivation and valuable chiefly for its timber or stone * * * that deponent has made no other application under this act; that he does not apply to purchase the same on speculation, but in good faith to appropriate it to his own exclusive use and benefit; and that he has not directly or indirectly made any agreement or contract in any way or manner with any person or persons whatsoever, by which the title which he might acquire from the government of the United States should inure in whole or in part to the benefit of any person except himself; which statement must be verified by the oath of the applicant before the register or the receiver of the Land Office within the district where the land is situated; and if any person taking such oath shall swear falsely in the premises, he shall be subject to all the pains and penalties of perjury and shall forfeit the money which he may have paid for said lands, and all right and title to the same, and any grant or conveyance which he may have made, except in the hands of bona fide purchasers, shall be null and void."

The third section of the act, so far as here applicable, is as follows:

"Sec. 3. That upon the filing of said statement * * * the register of the Land Office shall post a notice of such application, embracing a description of the land by legal subdivisions, in his office, for a period of sixty days, and shall furnish the applicant a copy of the same for publication at the expense of such applicant, in the newspaper published nearest the location of the

premises, for a like period of time; and after the expiration of said sixty days, if no adverse claim shall have been filed, the person desiring to purchase shall furnish to the Register of the Land Office satisfactory evidence, first, that said notice of the application prepared by the register as aforesaid was duly published in a newspaper as hereinbefore required; secondly, that the land is of the character contemplated in this act * * * and, upon payment to the proper officer of the purchase money of said land, together with the fees of the register and the receiver, as provided for in case of mining claims in the twelfth section of the act approved May tenth, 1872, the applicant may be permitted to enter said tract, and on the transmission to the General Land Office of the papers and testimony in the case, a patent shall issue thereon."

By Act Aug. 4, 1892, c. 375, 27 Stat. 348 (U. S. Comp. St. 1901, p. 1547), the provisions of the above-mentioned act were extended to all the public-land states.

The form of the "written statement" which the act of Congress requires applicants for such land to file with the register of the proper district, together with the form of the affidavit to be made by such applicant, prescribed by the rules and regulations of the Land Department, are, as have been shown, set out in the indictment, and the record further shows the printed form prescribed by the Land Office for the taking of the testimony of such claimant both direct and cross, together with the form of the certificate to be signed by a United States commissioner of the district certifying that the applicant personally appeared before him, and that each question and answer in the deposition was read to him in the presence of the commissioner before he signed his name thereto, and that the same was subscribed and sworn to before such commissioner at the time and place to be stated, and further certifying that the commissioner has tested the accuracy of the affiant's information and the bona fides of the entry by a close and sufficient oral cross-examination of the claimant and his witnesses, directed to ascertain whether the entry is made in good faith for the appropriation of the land to the entryman's own use, and not for sale or speculation, and whether he has conveyed the land or his right thereto, or agreed to make any such conveyance, or whether he has directly or indirectly entered into any contract or agreement in any manner with any person or persons whomsoever by which the title that may be acquired by the entryman shall inure in whole or in part to the benefit of any person or persons excepting himself, and that such commissioner is satisfied from such examination that the entry is made in good faith for the entryman's own exclusive use, and not for sale or speculation, nor in the interest nor for the benefit of any other person or persons, firm or corporation, and to which form is annexed this:

"Note: Every person swearing falsely to the above deposition is guilty of perjury and will be punished as provided by law for such offense. In addition thereto the money that may be paid for the lands is forfeited and all conveyances of the land, or of any right, title or claim thereto, are absolutely null and void as against the United States."

It is well settled that the Land Department has the power to make reasonable rules and regulations, not inconsistent with any valid law, for the purpose of giving effect to the provisions of the acts of Congress providing for the disposition of the public lands, which have the force

and effect of law, and of which rules and regulations the courts take judicial notice. Caha v. U. S., 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415; Knight v. Land Association, 142 U. S. 161, 12 Sup. Ct. 258, 35 L. Ed. 974; Orchard v. Alexander, 157 U. S. 385, 15 Sup. Ct. 635, 39 L. Ed. 737; Cornelius v. Kessel, 128 U. S. 461, 9 Sup. Ct. 122, 32 L. Ed. 482; Hawley v. Diller, 178 U. S. 495, 20 Sup. Ct. 986, 44 L. Ed. 1157; In re Kollock, 165 U. S. 533, 17 Sup. Ct. 444, 41 L. Ed. 813; Cosmos Exploration Co. v. Gray Eagle Oil Co. (C. C.) 104 Fed. 20–43; Id., 112 Fed. 4–11, 50 C. C. A. 79, 61 L. R. A. 230.

It is quite true, as argued by counsel for the plaintiffs in error, that no rule or regulation made by the Land Department is a law in the sense that it can make that a crime which is not made a crime by any statute of the United States. U. S. v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591. But the present is not a case in which the violation of a mere rule or regulation is made a crime; but, on the contrary, the crime charged against the plaintiffs in error is defined by the statutes of the United States, expressly defining and declaring what shall constitute the crime of conspiracy and the crime of perjury. Rev. St. §§ 5440, 5392 [U. S. Comp. St. 1901, p. 3653]. Not only is there no statute of the United States conflicting with the rule of the Land Department requiring any and every applicant to purchase land under the stone and timber act, to make proof by deposition of the facts required by the statute to be declared and sworn to in his preliminary written statement or declaration, but such rule is in furtherance of and in accord with the requirements of the statute in that regard.

It is perfectly plain, from the provisions of the statute and the rules and regulations of the Land Department, that, in order for any person to effect a purchase of any land under the act in question, he must first make an application to purchase by a verified written statement, which statement is an affidavit as to the truth of the matters therein declared, and, after a compliance with the prescribed procedure, must satisfy the register of the local Land Office by deposition, in which he and such witnesses as he may produce are examined and cross-examined under oath, of the truth of the matters required by the statute to be shown as a prerequisite to the authorized purchase. It is just as plain that intentional false swearing by the applicant in either instance, in respect to any of the material matter so required to be declared and sworn to, constitutes the crime of perjury, which crime is defined, not by any rule or regulation of the Land Department, but by a statute of the United States.

The indictment, in effect, charged the defendants thereto with having conspired to falsely, willfully, and corruptly suborn, instigate, and procure certain named persons to commit the crime of perjury within the district of Oregon, by knowingly and intentionally swearing falsely to material matter required to be stated and shown both in the verified written statement or declaration, and in the proof by deposition. The whole scheme, as alleged, and proved to the satisfaction of the jury, shows beyond question that the false swearing contemplated by the conspiracy could not have been otherwise than willful

on the part of the instigated persons. When the facts alleged necessarily import such willfulness, the failure to use the word itself is not fatal. Such failure, under such circumstances, would not be fatal even at common law. C. R. L. 309; Archbold's Cr. Pl. 429. See, also, U. S. v. Howard (D. C.) 132 Fed. 350, 351.

It is not the name but the essence of the thing that should control the court in the administration of justice. As has already been said, the gist of the offense charged against the plaintiffs in error was the conspiracy, the object of which was the commission of the crime of perjury by numerous persons, in order that the conspirators might acquire the government title to the desired lands. "In stating the object of the conspiracy," said the court, in United States v. Stevens (D. C.) 44 Fed. 141, "the same certainty and strictness are not required as in the indictment for the offense conspired to be committed. Certainty to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is required. When the allegation in the indictment advises the defendants fairly what act is charged as the crime which was agreed to be committed, the chief purpose of pleading is attained. Enough is then set forth to apprise the defendants so that they make a defense." See, also, Noah v. United States, 128 Fed. 272, 62 C. C. A. 618; United States v. Eddy (C. C.) 134 Fed. 114; U. S. v. Rhodes (C. C.) 30 Fed. 431.

We are of the opinion that the indictment is sufficient, and that the court below did not err in permitting proof of the false swearing of the instigated parties both in respect to their declaration in the verified written statement or application to purchase, and in the final proof made by deposition.

The plaintiffs in error also assigned for error various rulings of the trial court upon objections made by them to the admission of evidence. In passing upon such questions, it must not be forgotten that the character of the case is to be taken into consideration. It appears from the record that there was evidence tending to show that Williamson & Gesner were partners in the sheep business, and had a summer range for their sheep in what is called the "Horse Heaven Country," in Crook county, Or., about 25 miles from the town of Prineville, where they as well as Biggs, resided. The latter was a practicing attorney and a United States commissioner. The evidence also tended to show that all of the odd numbered sections of land in the township, in which was the summer range of Williamson & Gesner, were owned by a certain wagon road company from which Williamson & Gesner had leased for a number of years, for grazing purposes, some of those odd numbered sections; that in May, 1902, Williamson & Gesner learned that Morrow & Keenan, a rival sheep firm, had secured from the wagon road company a lease of practically all of its odd numbered sections in the township, and after endeavoring, without success, to defeat the consummation of the lease, Williamson & Gesner employed a surveyor to run the lines of the various sections of the township for the purpose of determining whether the springs and streams of water in the township were on the odd or even numbered sections, which survey showed that the most valuable springs and streams

were upon the even numbered sections, still owned by the government. The evidence tended to show that this township, while partially covered with small timber having no market value at the time, had extensive stretches of fine grazing land with no timber thereon. The evidence further tended to show that Gesner employed Biggs to secure persons to apply to purchase this land under the timber and stone act, and that 45 such persons made application to purchase land selected for them by Gesner within the said township within a period of about two months; the necessary money for which being advanced by Gesner & Williamson. The evidence further showed that Biggs, Gesner, Williamson, and the latter's wife, applied to purchase similar land at the same time, with a number of the other applicants.

The prosecution was allowed to introduce evidence, over the objection and exception of the defendants, to the effect that the lands so applied for were not chiefly valuable for the timber upon them, but, on the contrary, were more valuable for grazing purposes. It is contended, on behalf of the plaintiffs in error, that the conspiracy, according to the averments of the indictment, "contemplated that subornation of perjury should take place only when lands subject to entry under the timber and stone acts were being applied for," and therefore that evidence tending to show that the lands applied for by the instigated parties were not of the character embraced by those acts was incompetent. This objection proceeds upon an erroneous view of the indictment, which does not charge that the conspiracy alleged contemplated that the subornation of perjury should take place only when lands subject to entry under the timber and stone acts were being applied for, but that the instigated parties would so swear —which is an entirely different thing, and quite in line with the alleged fraudulent scheme. It is clear from the language of the statute itself that it is only lands that are chiefly valuable for the timber on them that are authorized to be purchased under the acts in reference to timber lands; but, if authority to that effect be needed, it is found in United States v. Budd, 144 U. S. 167, 12 Sup. Ct. 575, 36 L. Ed. 384.

The prosecution was also permitted, over the objection and exception of the defendants, to introduce evidence against the defendants Gesner & Williamson tending to show that Gesner had tried to induce one Penny to apply to the state of Oregon for school land in the same vicinity for the benefit of Williamson & Gesner, and also tending to show that he had induced one Mary Swearingen to file on state land, and that she had made the necessary affidavit and filed on the land, and afterwards transferred it to the firm of Williamson & Gesner. The case shows that the government relied upon a chain of circumstances to prove that the defendants procured each and every one of the 45 entrymen to swear falsely in making his application, and in making his final proof, by swearing that he was not seeking to purchase the land on speculation, but for his own exclusive use and benefit, and that he had not, either directly or indirectly, made any contract or agreement with any person by which the title which he might acquire to the land would inure to the benefit of another

person; whereas, in truth and in fact, he was applying to purchase the land on speculation and under a prior agreement to convey the title to the defendants Williamson & Gesner as soon as he acquired it from the government. It is manifest, therefore, that the motive of the respective parties to the transactions in question was of prime importance in the inquiry, and it was to that point only that the court below allowed the evidence now under consideration, being careful, both in admitting it and in the instructions to the jury, to limit the evidence to the question of motive and to the defendants Williamson & Gesner. In so doing, we think the court below committed no error. In Wood v. United States, 16 Pet. 343, 10 L. Ed. 987, Mr. Justice Story, speaking for the Supreme Court, said:

"Where the intent of the party is matter in issue, it has always been deemed allowable as well in criminal as in civil cases to introduce evidence of other acts and doings of the party of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judgment."

See, also, Moore v. U. S., 150 U. S. 57, 14 Sup. Ct. 26, 37 L. Ed. 996; Olson v. U. S., 133 Fed. 849, 67 C. C. A. 21; Wolfson v. U. S., 101 Fed. 434, 41 C. C. A. 422.

It is assigned for error that the trial court erred in its rulings in respect to the testimony of a number of witnesses for the government as to what their intention or understanding was when making their verified statement in respect to the land applied for, and when making their final proof in respect to the disposition of the land after they should acquire it from the government. All of such testimony was directly responsive to the allegations of the indictment, under which it was clearly competent for the prosecution to prove that the various entrymen swore falsely in respect to the material matters stated in their preliminary application for the land, and in their final proof, and that the real intention of all of the parties concerned was the obtaining of the government title to the land by means of such perjuries for the benefit of Williamson & Gesner. We see no error in the rulings of the trial court in the respects complained of; and, in respect to the charge of the court to the jury, a careful consideration of it satisfies us that it was eminently fair, and covered every aspect of the case in a very lucid manner. There was, therefore, no error in refusing any requested instruction.

The facts of the case were, as a matter of course, for the determination of the jury.

The judgment is affirmed.