# BRICKEY v. UNITED STATES.

## No. 11911.

Circuit Court of Appeals, Eighth Circuit.
Nov. 21, 1941.

Rehearing Denied Dec. 9, 1941.

Cullen Coil, of St. Louis, Mo. (Roscoe Anderson, of St. Louis, Mo., on the brief), for appellant.

David M. Robinson, Ass't U. S. Atty., of St. Louis, Mo. (Harry C. Blanton, U. S. Atty., of Sikeston, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

Section 592 of 12 U.S.C.A. makes it a misdemeanor for "Any officer, director,

agent, or employee of any \* \* \* insured bank \* \* \* who makes any false entry in any \* \* \* report, or statement of such \* \* \* insured bank, with intent in any case to injure or defraud such \* \* \* insured bank \* \* \* or to deceive any officer of such \* \* \* insured bank, \* \* \* or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such \* \* \* insured bank, \* \* \* and every person who, with like intent, aids or abets any officer, director, agent, employee", etc.

The appellant as president, and one Charles Porter, as cashier, of the Citizens Bank of Festus, Festus, Missouri, an insured bank, were indicted jointly in an indictment containing three counts, charged with violation of the statute supra. The first count alleged that the defendants made or caused to be made a false entry in a report to the Federal Deposit Insurance Corporation of the condition of the Festus bank as of the close of business on June 30, 1937, in that they reported that the demand deposits in the bank at that time were in the sum of $205,574.02 whereas the correct sum was $295,215.85, more or less. Counts 2 and 3 alleged that similar false entries were made in like reports for December 31, 1937, and June 30, 1938, respectively. The indictment charged that such false entries were made with intent to injure the bank and to deceive its officers, the Federal Deposit Insurance Corporation and its agents and examiners.

The defendant Porter pleaded guilty. The appellant, after one mistrial, was tried, convicted and sentenced on all three counts. On this appeal from such sentence the appellant contends that the court erred (1) in the admission of evidence, (2) in instructing the jury, (3) in overruling the appellant's motion for a directed verdict, and (4) that he was deprived of a fair trial by failure of a juror to disclose on voir dire that he had during the same year sat as a juror in a criminal proceeding against appellant in a state court of Missouri.

The evidence disclosed without dispute that the reports involved in the indictment were prepared and signed by Porter, the cashier of the bank, after which they were presented to and signed by the appellant in his capacity as a director of the bank. It is apparent that the immediate purpose of such a false entry in the reports might be to conceal and cover up a shortage

in the funds of the bank. Under the statute and the charge made in the indictment, and in the situation thus presented, the burden was upon the government to establish beyond a reasonable doubt not only that the entries were false as charged and that the appellant made or caused them to be made, but also that (1) he had knowledge of their falsity and (2) that he thereby intended either to injure the bank or to deceive its officers or the Federal Deposit Insurance Corporation or its officers, agents or examiners.

In outline the evidence on behalf of the government tended to show that appellant was wealthy. He was president of the Festus bank from 1922 to September, 1938. For several years during this period he was presiding judge of the county court, president of the school board, commissioner and treasurer of the Festus Special Road District, disbursing officer of the Civil Works Administration, and secretary-treasurer of the Festus Mercantile Company. The accounts of these various institutions were carried in the bank.

From 1926 until 1938 there was a shortage of various amounts in the assets of the bank. During the period covered by the three reports in question these shortages varied from $89,000 to $112,000. The shortages were due in large part to the fact that appellant removed or embezzled bonds or cash from the assets of the bank and with the aid of Porter concealed the shortages from the officers of the bank and from the Federal Deposit Insurance Corporation and its officers. Appellant and Porter continually discussed this situation. One of the devices used to conceal such deficits was to withdraw depositors' ledger sheets from the loose-leaf ledger in sufficient amounts to cause the resources and liabilities of the bank to appear to balance on the ledger and in the reports of the condition of the bank. By his plea of not guilty and in his testimony appellant denied both the withdrawal of assets and knowledge of the devices for concealing them employed by Porter.

The appellant complains of two items of evidence introduced by the government over his objections and exceptions. The first relates to a transaction in Festus School District bonds, and the second to a transaction occurring at window No. 3 in the bank on January 10, 1936.

The evidence relating to school bonds, the admission of which is complained of, is

to the effect that in 1924 the Festus School District of which appellant was president issued bonds in the amount of $50,000. In 1933 the school board decided to refinance $35,000 of these bonds still outstanding. The holder of $10,000 of the 1924 bonds refused to exchange them for bonds of the new issue. The appellant kept the refused bonds. In 1935 the holder of the $10,000 of 1924 bonds decided to exchange them for the new bonds. Appellant made the exchange and procured from the treasurer of the school district a certificate of cancellation of the old bonds, but instead of destroying the old void bonds appellant carried them in the bank as an asset of the bank until 1938, during which period two of the reports listed in the indictment were made.

The other transaction referred to occurred in January, 1936. The bank was being examined by the examiners of the Federal Deposit Insurance Corporation when they discovered a shortage of $6,200 at window No. 3 resulting from accumulated cash withdrawals by appellant. The examiners detected Porter writing three debit tickets to cover the shortage, one for $2,500 against the Festus Mercantile Company, one for $3,400 against the Festus Special Road District, and one for $300 against appellant's payroll account, all three of which accounts were controlled by appellant. Although no charges against these accounts in fact existed, Porter represented to the examiners that they were proper charges. After the examiners had gone Porter called appellant at his home and explained the situation. The next morning appellant saw the examiners and falsely represented that the shortage in reality consisted of three cash items the security for which was held locked in his desk. Later he wrote a letter to the examiner making the same explanation and admitting that it was an irregularity and saying that "no such items will occur again." The shortage was made whole within a few days.

The evidence of these two transactions was objected to on the ground that it was immaterial and irrelevant; that it did not tend to prove or disprove any issue on trial; that by insinuation it tended to charge appellant with crimes not contained in the allegations of the indictment; that it does not tend to prove motive or intent; that it does not tend to prove similar crimes; and that it was prejudicial.

■■ The general rule is that a crime can not be established by evidence of other distinct crimes not charged in the indictment. But where intent and knowledge are essential elements of the offense charged, evidence of transactions so connected with the specific offense charged that it tends to show criminal intent or guilty knowledge is admissible. Coffin v. United States, 162 U.S. 664, 673, 16 S.Ct. 943, 40 L.Ed. 1109; Moore v. United States, 150 U.S. 57, 14 S.Ct. 26, 37 L.Ed. 996; Wood v. United States, 16 Pet. 342, 41 U.S. 342, 10 L.Ed. 987; Strom v. United States, 6 Cir., 12 F.2d 233, 234; Boone v. United States, 8 Cir., 257 F. 963, 966, 967; Moffatt v. United States, 8 Cir., 232 F. 522, 533; Galbreath v. United States, 6 Cir., 257 F. 648, 658; Wolfson v. United States, 5 Cir., 101 F. 430, 433, 434; Dorsey v. United States, 8 Cir., 101 F. 746, 755, certiorari denied 178 U.S. 613, 20 S.Ct. 1030, 44 L.Ed. 1216.

■■ This was the second trial of the case. Counsel at the beginning were familiar with each other's theories and the nature of the government's evidence to support the issues. The appellant testified in his own behalf denying knowledge of the shortages in the bank, of his cooperation with Porter in concealing them, and of the falsity of the entries on the reports when he signed them. This evidence of the bond transactions, of the $6,200 shortage at window No. 3, and the use of the debit tickets, together with the conduct of appellant in his apparent effort to deceive the examiners, was admissible as tending to show intent and knowledge. The bond transaction was so intimately connected with the shortage at the times when two of the reports were made that it showed knowledge, and the transaction at window No. 3 also showed knowledge of the existing shortage less than two years earlier.

■ On cross-examination appellant was asked: "Q. Now, in 1938, when this blow-up in this bank occurred, the accounts of the Special Road District were audited, weren't they?" The question was objected to as immaterial. Over such objection the witness answered that they were. He further answered that a shortage in his account as treasurer of the district was found, and the assistant district attorney inquired whether the amount was $6,200, apparently attempting to identify it with the $6,200 shortage at window No. 3 referred to supra. The ruling of the court on the admission of this testimony is assigned as error.

On direct, appellant, had testified at length in reference to the $6,200 deficit at window No. 3 and to the method of handling the accounts of the road district. He had explained that the road district was indebted to the bank for a part of the total sum.

We do not think there was any prejudicial error, if indeed there was error. The subject of the $6,200 item and the account of the road district were opened up on direct. It was neither improper nor immaterial to cross-examine on the subject. The question as to the audit was within the scope of legitimate cross-examination and not subject to the objection interposed.

Appellant next complains of the following instruction to the jury: "In weighing the testimony of a witness, it is a rule of law that where two persons are jointly charged with an offense, one of them enters a plea of guilty, the other one a plea of not guilty, the one who enters the plea of guilty is testifying against the other, that we speak of the testimony of the one as the testimony of an accomplice. In this case, that applies, of course, to Defendant Porter. Now, when you are considering the testimony of an accomplice, you will consider that character of testimony with great care and caution, unless it has been corroborated. You must not convict a person upon such testimony, uncorroborated, unless you are convinced beyond a reasonable doubt that the testimony is true and that it is safe for you to accept it. Of course, if the testimony has been corroborated by other facts and circumstances in the case, that rule of law does not apply, if the other evidence is sufficient in itself upon which to base a conviction; but if the uncorroborated testimony of an accomplice is necessary, in itself, standing alone, for a conviction, you should scrutinize it with great care, because of the fact that it does come from an accomplice, as we speak of the term. That does not mean that the evidence of that character is not good evidence, it does not mean it is not sufficient upon which to base a conviction; it is merely a cautionary matter that you use great caution in considering the testimony, and if approached in that light and that frame of mind, you conclude that testimony is true, then of course you will act upon the testimony."

■ The instruction is criticized on two grounds. (1) It is claimed that the court told the jury "that there was sufficient evidence presented in this case from which the jury could find the defendant guilty of the offense charged, excluding the testimony of Porter", and (2) "that there was testimony in the case from which the jury could find corroboration for the testimony of codefendant Porter."

The instruction is not subject to the criticism suggested. The instruction informed the jury (1) that the uncorroborated testimony of an accomplice must be considered "with great care and caution"; and (2) that a person may be convicted upon the uncorroborated testimony of an accomplice if the jury "are convinced beyond a reasonable doubt that the testimony is true." (3) The question of whether there was corroborative testimony was submitted to the jury.

■ That the first two elements of the charge are sound can not be questioned. Caminetti v. United States, 242 U. S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A. 1917F, 502, Ann.Cas.1917B, 1168; Tinsley v. United States, 8 Cir., 43 F.2d 890, 894; Wishart v. United States, 8 Cir., 29 F.2d 103, 105; Webb v. United States, 8 Cir., 8 F.2d 145, 146. No definition of corroborating evidence was given and none was requested. No exception was taken on that ground. There was sufficient evidence in the record, however, to submit the question of its existence to the jury. One of the important issues in the case was whether appellant had knowledge of the shortage existing in the assets of the bank and reflected in the false entries on the reports. The documentary evidence, the manipulation of the bonds of the school district, and the transaction at window No. 3, all tend to corroborate Porter upon this point.

■■ It is next argued that the court erred in instructing the jury in substance that appellant by reason of § 550, 18 U.S. C.A., could be convicted if he aided, abetted, induced, or procured the making of the false entries by Porter. Clearly under the statute supra, upon which the indictment is based, appellant being an "officer" of the bank could be convicted as a principal. United States v. Giles, 300 U.S. 41, 57 S. Ct. 340, 81 L.Ed. 493. Since appellant did not himself make the false entries in the reports, the court read to the jury § 550, 18 U.S.C.A., as follows: "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

The indictment charged appellant as an officer of the bank and therefore as a principal. It did not allege that he aided and abetted Porter. For this reason it is said the instruction permitted the jury to convict appellant of a crime with which he is not charged. The instruction was unnecessary but entirely without prejudice to the appellant. It added no burden and required no prejudicial finding. The evidence warranted a conviction as principal under the indictment as clearly without the instruction as it did with it. Had he been indicted as an aider and abettor he could have been convicted as a principal. Hoss v. United States, 8 Cir., 232 F. 328, 335; Matters v. United States, 8 Cir., 261 F. 826, 827.

■ It is insisted that a verdict of acquittal should have been directed because there was no evidence that Porter who prepared the reports upon which the indictment was based told appellant that the entries thereon specified in the indictment were false.

The evidence warrants a finding that appellant abstracted and withdrew from the bank the money and bonds which were bound to result in the false entries specified. In these circumstances the jury would be warranted in finding that when the reports were presented to him by Porter for his signature he knew or should have known, without being told, that the false entries were there. This is the only fair conclusion which can be drawn from the evidence. See United States v. Giles, 300 U.S. 41, 57 S.Ct. 340, 81 L.Ed. 493. The argument is without merit.

Finally, it is contended that appellant was deprived of a fair and impartial trial because juror Diggs failed to disclose on voir dire examination that he sat as a juror within a year in a criminal proceeding against appellant in the state court.

The appellant does not complain that the trial court erred in any way. It is claimed that appellant did not discover that Diggs served on the jury in the state court until after the appeal was taken to this court. The contention is that he was denied a fair trial before an impartial jury because (1) Diggs was not a qualified juror and because (2) by reason of Diggs' experience as a juror on the former trial he must have formed an opinion upon the issues tried in the federal court.

■■ By the 6th Amendment of the Constitution the appellant was entitled to a trial by an impartial jury. The contention that Diggs was not a qualified juror because he had sat upon a jury at a trial in the state court within one year is without merit. The qualification of jurors in the federal court upon this ground is controlled by federal law. Section 286 of the Judicial Code, 28 U.S.C.A. § 423, provides that "No person shall serve as a petit juror in any district court more than one term in a year; and it shall be sufficient cause of challenge to any juror called to be sworn in any cause that he has been summoned and attended said court as a juror at any term of said court held within one year prior to the time of such challenge."

Had Diggs, therefore, sat upon a jury in the federal district court where this case was tried within one year, that fact would have been a ground for challenge for cause only. It might have been waived. But the fact that he sat upon a jury in another court under another jurisdiction was not even a ground for challenge. Walker v. Collins, 8 Cir., 50 F. 737; Morris v. United States, 8 Cir., 161 F. 672, reversed on another point on rehearing, 168 F. 682, certiorari denied 214 U.S. 527, 29 S.Ct. 704, 53 L.Ed. 1068.

■ The claim that Diggs must have formed an opinion by reason of his experience as a juror on the trial in the state court is at most conjectural. He was asked by the court whether he had formed an opinion upon the issues by reason of any former experience, and counsel for appellant inquired of him directly whether he had formed any opinion one way or another on the issues and he answered in the negative. The appellant and one of his counsel had been present at the trial in the state court, but no inquiry was made of the juror concerning his experience in that case. Had the fact of his service on the jury in the state court been brought out and had a challenge been urged on the ground that the juror had formed an opinion on the issues in the federal court there would have been presented only a question of fact for the determination of the trial court, and his decision could not have been set aside by this court unless manifest error appeared. Reynolds v. United States, 98 U.S. 145, 156, 25 L.Ed. 244.

■ The situation is not one calling for the intervention of an appellate court. No error is assigned. No affidavit has been filed contradicting the answers of Diggs on the voir dire examination. No motion for

any relief has been filed in this court. No right of appellant has been denied him. He and one of his counsel were present at both trials and they made no objection to the proceedings in the lower court. Upon this record no such miscarriage of justice is shown as to justify a reversal of the judgment appealed from by this court on its own motion.

Affirmed.