## ORLOFF v. UNITED STATES.
### No. 9974.

Circuit Court of Appeals, Sixth Circuit.
Feb. 4, 1946.

---

Henry C. Lavine, of Cleveland, Ohio (Henry C. Lavine, of Cleveland, Ohio, on the brief), for appellant.

John C. Ray, of Detroit, Mich. (John C. Lehr and John C. Ray, both of Detroit, Mich., on the brief), for appellee.

Before ALLEN and MARTIN, Circuit Judges, and MILLER, District Judge.

ALLEN, Circuit Judge.

The appellant, together with forty-one co-defendants,[1] was indicted for conspiracy to violate the internal revenue laws by manufacturing, dealing in, receiving, possessing and transporting tax-unpaid liquor with intent to defraud the United States. Sec. 37 Criminal Code, 18 U.S.C.A. § 88; 26 U.S.C., § 1397(a) (1) (§ 3253 Int.Rev. Code, 26 U.S.C.A. Int.Rev.Code, § 3253); 26 U.S.C., § 1152a (§ 2803, Int.Rev.Code, 26 U.S.C.A. Int.Rev.Code, § 2803); 26 U.S.C., § 1184 (§ 2833, Int.Rev.Code, 26 U.S.C.A. Int.Rev.Code, § 2833) and 26 U.S.C., § 1441 (§ 3321, Int.Rev.Code, 26 U.S.C.A. Int.Rev.Code § 3321). The record reveals the existence in the city of Chicago, Illinois, of three large illicit distilleries containing six stills from which an illegal wholesale and retail liquor business was carried on through the Middle West. The specific acts in furtherance of the conspiracy with which appellant was charged were that in conjunction with one Dan Coughlin, co-defendant, appellant aided and abetted in the transportation of tax unpaid liquor from Chicago to Cleveland with intent to defraud the United States.

The following facts were established by substantial evidence: Appellant, together with Coughlin, hired Thomas William Smith, a mechanic who did some regular work at the garage of Stephen A. Haic in Cleveland, Ohio, to drive a truck which was used in carrying illicit liquor from Chicago to Cleveland. Coughlin and the appellant jointly negotiated with Haic, who did business in body repairing, to change the body of a certain truck from one with a steel body to a truck with a flat bed on it. The steel body was left in Haic's shop. Appellant and Coughlin instructed Haic how to mount the body and had him arrange to have "United Poultry Company" lettered on the cab. Appellant and Coughlin then purchased certain poultry crates, which they had made to order, of an unusually large size. Coughlin and appellant picked them up at the box factory and loaded them on the truck, and appellant paid the balance due on the crates, initialing the slip at the box company "H.R.O." Appellant was generally present when Coughlin instructed Smith concerning his various trips. These instructions usually were to the effect that Smith was to drive the truck to Chicago and park it at a designated place, then pick it up and drive it to Cleveland. On one of his trips Smith saw Coughlin and the appellant together in Chicago.

The truck with the poultry crates was seen near one of the points used by the co-defendants in charge of the distilleries in Chicago as a distributing point or "drop" for the illicit liquor. The method of supplying the liquor was that the truck was driven by an employee of the Chicago gang into a garage from which the liquor was distributed was loaded and thence was driven to a location in Chicago where the truck

---

[1] We are informed that all of the other defendants have either pleaded guilty or have been previously convicted.

was parked. Smith got into the truck at that point and drove east out of Chicago. When arrested near Toledo in January, 1941, Smith was found to have a load of 330 gallons of tax-unpaid alcohol in 66 five-gallon cans concealed in six poultry crates. York, one of the co-defendants who was actively connected with the illicit delivery of liquor from the distillery at 4421-23 South LaSalle Street, Chicago, had in his possession a key which at the time of Smith's arrest fitted the door of the poultry truck.

Appellant and Coughlin at about the time of Smith's arrest telephoned Haic several times, asking whether Smith had come in with the truck, and Haic notified them of Smith's arrest. Both appellant and Coughlin then instructed Haic to destroy or get rid of the old steel body of the truck, but he refused to do so. Appellant did not testify.

■■ The statement of the above testimony disposes of appellant's numerous contentions based upon the proposition that the trial court should have sustained a motion to direct a verdict in his favor. Appellant urges that if a conspiracy to violate the internal revenue laws existed he was unaware of it and did not knowingly participate in any illegal arrangements. We think the circumstances indicating guilt are too many and too cogent to be consistent with innocence. The negotiations by appellant for the change of the truck body, the ordering of chicken crates of peculiar dimensions where no chicken business was shown to be engaged in, the payment by appellant of the balance due on the crates and their effective use to camouflage the presence of large quantities of whiskey, the anxiety of the appellant over the whereabouts of Smith and his insistence that the steel truck body be destroyed, constitute substantial evidence upholding the verdict of the jury.

■■ Other contentions likewise have no merit. We find no reversible error in the refusal of the court to admit the written statement made by Smith at the time the appellant desired to introduce it in evidence. The court indicated that counsel for appellant could renew the application, but he failed to take advantage of the opportunity. Neither did the court commit reversible error in its charge upon conspiracy nor in its comment on the evidence. In its instructions the court emphatically stated that the jury must depend upon its own recollection of the evidence. However, the court committed prejudicial error in its failure properly to limit the scope of certain testimony as to the commission by the appellant of a similar offense fifteen years before that charged in the indictment. A witness stated that in 1929 he had had illegal liquor transactions with the appellant. The court refused a request to instruct the jury that this testimony should be considered only on the question of identification of the defendant and not on the question of guilt or innocence, and in no way limited the jury in its consideration of this evidence. Appellant now contends that this testimony was too remote in time to be admissible, and that the jury should have been instructed to disregard it; and the failure of the court to give such a charge is assigned as reversible error, although it was not in terms requested.

■■ We think the objection that the testimony was too remote in point of time is not tenable. No limit is placed upon the power of the court to admit evidence of prior similar transactions committed by the accused in the ordinary course of his business, where, as here, a specific intent to defraud is an element of the offense. Kettenbach v. United States, 9 Cir., 202 F. 377, 384. As stated by Judge Swan in Spurr v. United States, 6 Cir., 87 F. 701, 711: "The period of time within which the matter offered to establish the guilty purpose must have occurred to permit of their admission is largely discretionary with the court. Moore v. United States, 150 U.S. [57] 60, 14 S.Ct. 26 [37 L.Ed. 996] * * *." The court in Kettenbach v. United States, supra, pointed out that in Walsh v. United States, 7 Cir., 174 F. 615, the previous transactions of which evidence was given occurred during the twelve years prior to the transaction which formed the basis of the indictment. In view of the fact that appellant's principal defense is that his presence during all of the transactions with the truck driver, the securing of the chicken crates for a non-existent business, the changing of the truck body, etc., is explained simply by his friendship with Coughlin, the fact that he personally was engaged in the illicit liquor business a number of years before the period covered by the indictment is relevant as to the existence of guilty knowledge. It tended to show his experience in such transactions. The length of time is not conclusive; it goes only to the weight of the testimony.

Cf. Williamson v. United States, 207 U.S. 425, 451, 28 S.Ct. 163, 52 L.Ed. 278, in which the Supreme Court, discussing this subject, quotes with approval an earlier decision of that court to the effect that the modern tendency it to give as wide a scope as possible to the investigation of the facts. In Kempe v. United States, 8 Cir., 151 F.2d 680, specific intent was not an element of the crime charged.

■■ However, the testimony was admissible only upon the existence of fraudulent intent. Weiss v. United States, 5 Cir., 122 F.2d 675; Wood v. United States, 16 Pet. 342, 41 U.S. 341, 352, 10 L.Ed. 987. While the request to charge was not a precise statement of the law, it fairly apprised the court of the point made and required the court to charge the jury to consider the testimony only upon the question of guilty knowledge and intent to defraud the government. Richardson v. United States, 6 Cir., 150 F.2d 58, 66. The failure to give this instruction constituted prejudicial error for which a new trial must be ordered. The appellant was entitled to a correct statement of the law from the court. Thomas v. United States, 6 Cir., 151 F.2d 183.

The judgment is reversed and the case is remanded for new trial in accordance with this opinion.