## BENNETT v. BENNETT.

**ERROR TO AND APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.**

No. 98.   Argued January 9, 10, 1908.—Decided February 24, 1908.

Under pars. 3983, 3984, §§ 105, 106, Code of Civil Procedure of Oklahoma Territory, of 1893, providing for the entry of judgment by default and giving the court power in opening the default to impose such terms as may be just, the court may, without abusing its discretion, in an action for divorce in which the husband defendant is flagrantly in default, impose as terms in granting him leave to answer that he pay within a specified period to the plaintiff a reasonable sum for alimony and counsel fees which had already been allowed, and in case of his failure so to do judgment for the relief demanded in the complaint may properly be entered against him. *Hovey* v. *Elliott*, 167 U. S. 409, distinguished.

15 Oklahoma Reports, 287, affirmed.

THE question in this case is whether, in a suit for divorce, the defendant being in default for not answering within the time allowed by statute, a court may make it a condition of permission to answer that he comply with the order of the court directing him to pay temporary alimony and attorney's fees.

It will avoid confusion to designate the parties as they were in the trial court, the appellee as plaintiff and the appellant as defendant.

The plaintiff brought suit for divorce against the defendant in the District Court of Lincoln County, Oklahoma Territory, on the twenty-first of May, 1903, alleging as the grounds thereof extreme cruelty. She alleged in her complaint that defendant was the owner of certain personal property and certain real estate, and that defendant had, for the purpose of defrauding her, conveyed such real estate to Harry M. Bennett, a son by a former marriage. She prayed for a divorce, just division of the real and personal property and the custody of a child which had been born to her and defendant. She also prayed for $1,000 temporary alimony and $1,000 attorney's fees.

Summons was issued requiring defendant to answer by the

tenth day of June, or the petition would be taken as true and judgment rendered accordingly.

The return of the sheriff recites that he served it on May 22, 1903, at 8:55 A. M., by leaving for defendant, "at his usual place of residence." in the county, "a true and certified copy" of the summons "with all the indorsements thereon."

On the day plaintiff filed her petition she applied for an order restraining defendant from disposing of his property, and that he pay into court the sum of $1,000 temporary alimony, "to support her and carry on her suit," as she was "unable, on account of sickness and late confinement, to do work of any kind or character," and that he pay into court $500 for the support and maintenance of the child born to her and defendant, and also $500 for attorney's fees. Notice of the application was personally served on defendant. The application was heard by order of the court at chambers on the twenty-third of May. The defendant did not appear. A restraining order was granted and defendant ordered to pay into the office of the clerk of the court within ten days "the sum of one thousand dollars, for the use and benefit of the plaintiff as temporary alimony and suit money," and the sum of $100, attorney's fees.

On the twenty-third of July, 1903, plaintiff filed an amended petition, in which she repeated the charges of cruelty, made fuller allegations as to the property of defendant and attempts at its disposition. In this petition Harry M. Bennett, a son of defendant by a former marriage, was made a party by his next friend and guardian. Service was made upon the defendants by publication and they were required to answer on or before the fourth day of September, 1903. It also appears from the record, under the head of "Journal entry," that defendant "was duly and legally served, personally, with an alias summons" after the filing of the amended petition. By this summons defendant was required to answer by the twelfth day of March, 1904. The record shows that on the twenty-fourth of September, 1903, the following proceedings took place:

"Come now the plaintiff and defendant, A. W. Bennett, by their respective counsel, and said defendant submits a motion to set aside service of summons herein, and the court being fully advised: It is by the court ordered—be given leave to amend return on said summons."

On the same day Harry M. Bennett was given additional time to answer, and on the thirtieth of September, did answer by his guardian *ad litem,* appointed by the court, denying each and every allegation of the petition.

The record contains an order, which recites that plaintiff and defendant appeared by attorneys on the sixth of April, 1904, being a regular court day, and also recites "this motion comes up for hearing, on the motion of Albert W. Bennett, who appears specially by his attorneys, for the purpose of this motion only, and for no other purpose, to set aside the summons in this case." The grounds of the motion are given. The court overruled the motion and defendant excepted. "Whereupon," the order recites, "the defendant Albert W. Bennett, by his attorneys, offered to file his answer in this cause, instanter, which said offer was refused by the court for the reason that the said defendant is in contempt of this court by reason of his failure and refusal to comply with the order of the court, heretofore made, to pay to the plaintiff in this cause the sum of one thousand dollars as and for temporary alimony, and one hundred dollars as attorney's fees in this case, but made the further order that the said defendant should be permitted to file said answer within five days on condition that he purge himself of said contempt by complying with said order within that time; to which order of the court the defendant Albert W. Bennett excepted at the time."

In the decree of the court the proceedings are stated as follows:

"The court further finds that on the fifth day of April, 1904, the defendant A. W. Bennett appeared by his attorneys and asked leave to file his answer herein out of time, which request was objected to by the plaintiff, for the reason that the said defendant had failed to comply with an order theretofore made

to pay to the clerk of the court for the use of the plaintiff the sum of one thousand dollars as and for temporary alimony and the further sum of one hundred dollars as and for attorney fees for her attorneys, and the court being advised that the defendant had not complied with said order or offered any excuse for his failure so to do, his application for leave to answer is refused until he shall comply with said former order or show cause why he has not, and he is given five days to make said showing and in which to file his said answer."

And the decree further recites that on the twenty-ninth day of April, 1904, the cause came on for trial, and plaintiff appeared and Harry M. Bennett also appeared, "and the defendant A. W. Bennett having failed to comply with the former order of the court or make excuse for not complying, and having failed to answer the petition of plaintiff herein, the said defendant A. W. Bennett is now called three times in open court, but makes default and fails to plead or otherwise appear in said cause, and the said A. W. Bennett is by the court adjudged to be in default for an answer and not entitled to answer or plead until he shall comply with the order heretofore made, wherein the said A. W. Bennett was ordered by the court to pay to the plaintiff $1,000.00 temporary alimony and $100.00 attorney fees for her attorneys."

The decree dissolved the marriage between plaintiff and defendant, awarded her the custody of their child, awarded her the homestead as her sole property and $6,000 permanent alimony and $500 attorney's fees. The decree vacated the order made for temporary alimony and the payment of $100 attorney's fees. The decree was affirmed by the Supreme Court of the Territory. This appeal is from that part of the decree awarding alimony and attorney's fees.

*Mr. James R. Keaton,* with whom *Mr. John W. Shartel* and *Mr. Frank Wells* were on the brief, for plaintiff in error and appellant:

Under the laws of Oklahoma Territory, before any person

can be legally adjudged guilty of contempt of court, by reason
of his having refused to obey an order of the court or judge,
he must be complained against in writing, cited to appear be-
fore the court and show cause why he should not be punished
for such contempt, and given an opportunity to be heard.
Okla. Rev. Stat., §§ 2125, 2126, 2127; General, § 4037. See
also *Johnson* v. *Superior Court,* 63 California, 578.

Under § 4037 the court's power to enforce compliance with
an order awarding temporary alimony is limited to the attach-
ment of defendant, followed by fine and imprisonment if he is
found guilty of willfully disobeying such order. *Hutchison* v.
*Canon,* 6 Oklahoma, 725, 728.

See, also, as to statutory limitation of such power, *Johnson* v.
*Superior Court, supra; Hovey* v. *Elliott* (N. Y.), 39 N. E. Rep.
841.

In this case no application for an attachment was ever made
and, in fact, no order was ever passed directly adjudging de-
fendant in contempt. *McClatchy* v. *Superior Court,* 51 Pac.
Rep. 696, 698; *Galland* v. *Galland,* 44 California, 475; *Palmer*
v. *Palmer,* 18 So. Rep. 720.

Even if defendant had been legally adjudged guilty of con-
tempt for his willful failure to comply with said order to pay
temporary alimony and counsel fees, still the trial court com-
mitted prejudicial error in denying him the right to file his
answer and make his defense to said action. *Hovey* v. *Elliott,*
167 U. S. 409.

The power of a court to deny a favor to a person in contempt
does not include the power to refuse to a person in contempt
the right to defend in the principal cause on its merits. *Hovey*
v. *Elliott,* 167 U. S. 409.

*Mr. L. T. Michener,* with whom *Mr. John Embry* and
*Mr. W. W. Dudley* were on the brief, for defendant in error and
appellee:

The order of the trial court refusing to permit the defendant
to file an answer, unless within five days he should comply with

the previous order of the court for the payment of temporary alimony and attorney's fees, cannot be reviewed here.

It was clearly within the exercise of the discretion of the trial court to make the order referred to, and the subject or the ruling is one which cannot be reviewed by this court, unless it should be obvious that the trial court violated the Oklahoma statutes, or a fundamental rule of a court of equity, or was guilty of a clear abuse of discretion.

It is clear that the trial judge, by the order which is here attacked, kept himself clearly within the provisions of the statute. Defendant had neither answered at the time or times named, nor had he complied with the order of the court. He was in default nearly a year.

There was no abuse of the discretion of the court, nor the obvious violation of a fundamental rule of a court of equity, in the making of this order.

Matters resting entirely in discretion are not re-examinable in a court of errors. *Pomeroy's Lessee* v. *State Bank,* 1 Wall. 592, 598; *Packet Co.* v. *Sickles,* 19 Wall. 611, 615; *Van Stone* v. *Stillwell &c. Mfg. Co.,* 142 U. S. 128, 134; *Earnshaw* v. *United States,* 146 U. S. 60, 68; *Mexican Cent. Ry.* v. *Pinkney,* 149 U. S. 194, 200, 201.

MR. JUSTICE MCKENNA, after stating the case as above, delivered the opinion of the court.

The assignment of errors attacks the decree of the Supreme Court because (1) the court decided or assumed that the defendant was in contempt for not complying with the order for temporary alimony. (2) In so holding or deciding, though defendant had not been cited to show cause why he should not be adjudged in contempt for not complying with the order. (3) (4) In affirming the action of the trial court refusing permission to defendant to answer to, or make defense against, the amended petition except on condition that he should comply in five days with the order for temporary alimony. (5) In

affirming the decree of the court awarding plaintiff $6,500 permanent alimony and attorney's fees and certain real property, constituting the homestead of the parties.

The assignments of error are based upon a misunderstanding of the action of the trial court and the opinion of the Supreme Court. They proceed upon the supposition that he was not in culpable default to the law and the orders of the court—a default after amplest opportunity to be heard and to contest every charge and claim against him.

The summons issued upon the original petition was served upon him by leaving a copy of it at his usual place of residence, as under the law it could be served. Par. 3938, § 64, Okla. Stat. 1893. It contained the notification that unless he answered by the sixteenth of June, 1903, the petition would be taken as true, and judgment would be rendered accordingly. He paid no attention to it. Yet there is more than the legal presumption that he received it, for on the day preceding there had been served on him a notice of the application for the temporary alimony and attorney's fees, the order to pay which makes the pivot of this controversy. He does not seem to have been sensitive to the charges against him, and, it may be, he thought his property was secure from the demands of the plaintiff by the conveyance to his son on the day before. The order upon the application was made May 23, 1903. He did not obey it. On the twenty-first of July, 1903, the amended petition was filed. It was served by publication, he having changed his residence to Nevada. He was notified to answer on or before September 4, 1903. He did not answer, but on that day he appeared by counsel and submitted a motion to set aside service of summons, upon which motion the record shows the court made the following order: "It is by the court ordered—be given leave to amend return on said summons." He was subsequently personally served with an alias summons.

It required an answer to the petition on or by the twelfth of March, 1904. An answer was not filed. On the sixth of April following a special appearance was entered and a motion

made to set aside the summons and the alias summons on various grounds, which motion was denied after hearing. The defendant then offered to file an answer "instanter," and the offer was refused on the ground that he was in contempt of court for not complying with the order for temporary alimony. It was, however, ordered that he should be permitted to file an answer "within five days 'on condition that he purge himself of said contempt by complying with said order within that time." From the decree of the court it appears that its order was not so absolute, but that he was given an opportunity to show why he had not complied with the order for alimony. Had the court the power to impose the conditions? Could the court have imposed any conditions or terms at all, and what was the limit of its power? If the court had a discretion it cannot be reviewed unless it was unreasonably exercised. And the court certainly had a discretion. We have seen that par. 3933, § 59 of the statutes of the Territory prescribes the result to a defendant for default in not appearing to be that the petition against him will be taken as true and judgment shall be rendered accordingly. If there is any modification of this in a suit for divorce it gives no rights to a defaulting defendant. Par. 3983, §:105 of the Code of Civil Procedure of the Territory of 1893 provides that a defendant must demur or answer within twenty days after the day on which the summons is returnable, and. par. 3984, § 106 is as follows:

"The court, or any judge thereof in vacation, may, in his discretion, and upon such terms as may be just, allow an answer or reply to be made, or other act to be done, after the time limited by this act, or by an order enlarge such time."

The question, then, can only be whether the court abused the discretion given to it by that section. Were the terms which the court imposed just?

The record demonstrates that the order for alimony was reasonable in itself and reasonable in relation to the means and obligations of defendant to plaintiff. According to plaintiff's petition, and presumably according to proof submitted

to the court upon the application for alimony of which defendant had notice, plaintiff was compelled by his cruelty to leave him with her child, then only a month old. She had no means to support herself and child. She was sick and unable to seek work. She was without means to carry on her suit for divorce. This was her situation as presented to the court, and defendant did not appear to deny it. He did not appear to deny that he owned real estate in the county where he lived of the value of $20,000, and in other places of the value of $14,000; that he had bank deposits of $10,000, and other personal property of the value of $15,000. He did not appear to deny that his cruelty—a cruelty of a peculiar kind—had driven her with her infant from his house. To this he was not sensitive. He was, however, not without anxiety for some of the consequences of the charge, and immediately set about to dispose of his property. After this he seemed to feel secure, either in misunderstanding of his rights or in some perverted notion that he could evade or defy the law. At any rate, he did not appear and he did not obey the order of the court. Whether it could have been directly and expeditiously enforced against him may be doubted. He had put his property in the name of others. An execution, therefore, would have encountered that obstacle, and personal coercion might not have been possible, for certainly as early as July, 1903, he had changed his residence to Virginia City, Nevada. Besides, under the circumstances, plaintiff cannot urge that compliance with the order of the court could have been enforced in some other way than that adopted. It may be that the poverty which made the order of the court a necessity to her prevented her from enforcing the order, and the defendant may have deliberately planned to that end. And it may have appeared to the court at the hearing of April 5, 1904, that he had done so. It may have appeared to the court that his contumacy was without just cause or reason, and it would be continued to defeat the order of the court, though he should receive from its discretion a remission of the consequences of his default. Take the order of

the court in its most absolute sense and, we say again, it was reasonable. Take it as described in the final decree and it was indulgent. It added another opportunity to be heard in addition to those defendant had been given.

The plaintiff in error, without any discussion of the section of the Oklahoma statutes, which we have quoted, attempts to avoid their effect by the contention that he had never been adjudged guilty of contempt, and, even if he had been, the power of the court to punish him was limited by a statute of the Territory to imposition of a fine or a sentence of imprisonment. He hence seeks to invoke the doctrine of *Hovey* v. *Elliott*, 167 U. S. 409. The contention is based, as we have said, upon the argument that the assignments of error are upon a misconception of the action of the court. The principle of *Hovey* v. *Elliott*, therefore, is not applicable. Indeed, the point was reserved in that case, whether one in contempt could be refused a right under a statute invoked by him as actor. But we need not stop to consider whether the reasoning, which we may say now we entirely approve, or the cases cited, carry the principle of the case to the point reserved, for we are of opinion that the pending case is not within the principle. The question here, we repeat, is the simple one whether, under the statute giving the power to a court to allow a defaulting defendant to answer "upon such terms as may be just," the order in controversy was within the power. And being of opinion that an affirmative answer is justified, the decree of the Supreme Court of the Territory is

*Affirmed.*

Mr. Justice Brewer dissents.