MARY E. McNAMARA, APPELLEE, V. WILLIAM C. Mc-
NAMARA, APPELLANT.

FILED APRIL 23, 1910.   No. 16,017.

1. **Constitutional Law: DUE PROCESS OF LAW: DIVORCE: STRIKING ANSWER.** An order of court in a divorce suit, striking out the answer of the defendant as to the dissolution of the marriage relation, and refusing to allow him to defend, except as to the amount of alimony, on account of his failure to comply with a previous order for the payment of temporary alimony, violates the constitutional right of the defendant to due process of law, and is erroneous.

2. **Cases Distinguished.** *Reed v. Reed,* 70 Neb. 779, and *Brasch v. Brasch,* 50 Neb. 73, distinguished.

APPEAL from the district court for Dakota county: ANSON A. WELCH, JUDGE.  *Reversed.*

*R. R. Dickson,* for appellant.

*D. H. Sullivan, M. F. Harrington* and *R. E. Evans,* contra.

LETTON, J.

This was an action for divorce and alimony. The plaintiff succeeded in the court below, and the defendant has appealed. The plaintiff and defendant were married in June, 1900. At that time the plaintiff, who was then Mary E. McAllaster, was 18 years of age, while the de-

fendant, who had been previously married, had reached the age of 49 years. After the marriage they lived upon a farm in Plymouth county, Iowa, until early in the year 1905, when they removed to a ranch of $2,000 acres in Brown county, Nebraska, and there resided until January, 1906, when the plaintiff with her four children returned to the residence of her father in Dakota county, Nebraska, where she has since resided.

The petition alleges a number of specific acts of cruelty on the part of the husband extending over a period of years, alleges, in substance, that the defendant is the owner of over 2,000 acres of land, worth about $25,000, and that he is also the owner of personal property, worth about $14,000. The answer admits the marriage, denies that the plaintiff was a resident of Dakota county when she began the suit, and denies the specific acts of cruelty alleged. The reply is, in substance, a general denial. An application for alimony *pendente lite* was made, upon which a hearing was had and an order made by the court requiring defendant to pay as temporary alimony $200 on or before the 21st day of January, 1907, and $200 on the first of each month thereafter during the pendency of the action. Defendant failing to comply with this order, on the 4th of December, 1907, a motion was filed by the plaintiff to strike so much of defendant's answer as states a defense to the application for divorce, and to prohibit him from further defending, because he has disregarded the order of the court relative to temporary alimony. The defendant filed objections to the motion, alleging inability to comply with the order, and that he had a constitutional right to defend. A hearing was had, the court entered an order requiring the defendant to pay $300 for the use of the plaintiff in carrying on and prosecuting the suit, and, in default of payment of that sum, the defendant's answer as to divorce to be stricken, but his answer as to alimony to stand. Defendant failing to make this payment, another motion was filed to strike the answer, and to prohibit the defendant from further defending that part of

the action relating to the granting of a divorce, because the order of the court relative to the suit money and counsel fees had been disobeyed. The defendant then filed an affidavit that, since the last order was made, "he has made every .effort to borrow and raise said sum and has been absolutely unable to procure said sum, that he therefore objects to his answer being stricken." A hearing was had, and the journal recites: "And said motion was submitted to the court on the evidence heretofore offered, the affidavit of defendant this day filed, and the admission of the defendant that since December 19, 1907, he has offered to pay into court said sum of $300, provided the sum would be accepted in full for all suit money." The motion was sustained and the answer stricken. When the case came on for trial, counsel for defendant, under the instructions of the court, took little, if any, part in the trial of the issues as to cruelty, though participating fully in the trial of the issues relating to the value of defendant's property and the allowance of alimony and suit money. A decree was finally entered granting plaintiff an absolute divorce and the custody of the children, finding that the defendant was possessed of real and personal property of the net value of $20,000, awarding the plaintiff the sum of $3,000 permanent alimony, and requiring the payment of $600 a year for the maintenance of the children until the further order of the court.

The question of vital importance, as the case stands, is whether or not the court was acting within its authority in sustaining the motion to strike defendant's answer and refusing to permit him to defend as to the issue of divorce. The plaintiff insists that under the rule announced in *Brasch v. Brasch*, 50 Neb. 73, and *Reed v. Reed*, 70 Neb. 779, there can be no question that the action of the court was warranted and proper. The defendant contends that, under section 3 of the bill of rights (const., art. I), providing that "no person shall be deprived of life, liberty, or property without due process of law", and section 13, that

"all courts shall be open, and every person, for any injury done him in his lands, goods, person, or reputation, shall have a remedy by due course of law, and justice administered without denial or delay", he was entitled to be heard in his defense, and that the right to defend cannot be denied him on account of his failure to pay suit money as ordered. He further contends that this case may be distinguished from the cases mentioned; that, having shown by his affidavit that he was unable to comply with the order of the court, he should have been permitted to make his defense, quoting the language of the opinion in the *Reed* case that, "if he had complied with this order, or if he had shown to a reasonable certainty that he was unable to comply with it, no doubt the court would have permitted him to try his case instead of dismissing it without a hearing."

Defendant's counsel insists that the doctrine announced in the cases mentioned is erroneous. He relies with great confidence upon the opinion in the case of *Hovey v. Elliott*, 167 U. S. 409. This opinion, written by Mr. Justice White, shows an exhaustive examination by the learned writer of the powers of chancery courts to enforce obedience to an order made in the progress of a suit, by denying the right of defense to the disobedient party. In that case, which was not a divorce suit, the defendant's answer was stricken from the files and a decree *pro confesso* rendered on account of defendant's failure to comply with an order of the court. The supreme court held, in substance, that, while matters of favor or of grace might be refused to a litigant for a failure to comply with orders made in a case, still a denial of the right to defend on account of disobedience to an order in the case was a denial of due processs of law, and that a judgment for the plaintiff *pro confesso* in such a case was rendered without jurisdiction and might be collaterally attacked. In *Bennett v. Bennett*, 208 U. S. 505, this distinction is made, and it is held that, where an Oklahoma statute gave the court power, "in its discretion, and upon such terms as may be

just," to allow an answer to be filed after the time limited by statute, it was within its power to make the payment of the sum fixed by an order for temporary alimony a condition precedent to the allowance of the filing of defendant's answer in the divorce suit after default, and that such an order was not in violation of the constitutional provision invoked in *Hovey v. Elliott, supra.* The ruling in *Hovey v. Elliott* is in accordance with the great weight of authority. *Bachelor v. Bachelor,* 30 Wash. 639, 71 Pac. 193; *Gordon v. Gordon,* 141 Ill. 160, 21 L. R. A. 387; *McMakin v. McMakin,* 68 Mo. App. 57; *Johnson v. Superior Court,* 63 Cal. 578; *Foley v. Foley,* 120 Cal. 33, 52 Pac. 122; *Baily v. Baily,* 69 Ia. 77; *Allen v. Allen,* 72 Ia. 502; *Trough v. Trough,* 59 W. Va. 464, 4 L. R. A. n. s. 1185; *Cason v. Cason,* 15 Ga. 405; *Dwelly v. Dwelly,* 46 Me. 377.

The contrary view is held in a few states, New York being the most notable. The leading case in that state is *Walker v. Walker,* 82 N. Y. 260. But the opinion in this case is critically examined by Mr. Justice White in his opinion in *Hovey v. Elliott,* 167 U. S. 409, and it is clearly shown that the New York court proceeded upon a mistaken view as to the prior practice in the courts of English chancery. Both Nelson, in his latest work upon divorce (2 Nelson, Divorce and Separation, sec. 861), and Bishop take this view. Speaking of certain cases from New York, Arkansas, and California, cited in the note to section 1095, 2 Bishop, Marriage, Divorce and Separation, holding that privileges may be withdrawn for failure to comply with an order of the court, Mr. Bishop says: "Possibly some of the cases under these heads have gone too far. The interest of the public, while not prejudiced by what delays the cause or ends it without trial, will not permit a hearing with the channels of evidence obstructed. Therefore public policy forbids that a husband's refusal to pay temporary alimony should deprive him of the right to defend the suit."

It has been pointed out by the supreme courts of Mis-

souri, Illinois, and West Virginia that the public inter-
est is involved in divorce proceedings to such extent that
it is deemed a *quasi*-party, and that if a defense to a di-
vorce suit is suppressed and a marriage dissolved upon
the application of one party, supported by evidence which
is not permitted to be contradicted or disputed, even
though countervailing evidence is alleged to be in exist-
ence, the public is deprived of its rights to preserve the
marriage relation, and that is done which is clearly
against public policy. The arguments in support of the
principle here adopted have been so fully and ably set
forth in the opinions of other courts in the cases above
cited that it is unnecessary to do more than merely refer
the reader of this opinion to where they may be found.
Nor do we consider this court committed to a contrary
doctrine by any previous decisions. The statement in
*Brasch v. Brasch,* 50 Neb. 73, that whether a husband
may be required to pay his wife suit money and expenses,
"as a condition precedent to the right of the husband to
further prosecute or defend, are matters within the dis-
cretion of the district court," is pure dictum so far as the
right to defend is concerned, the question not being pre-
sented or involved in the case. In *Reed v. Reed,* 70 Neb.
779, the point decided was that a plaintiff husband in a
divorce case may be required to pay his wife the sum al-
lowed to her for her support and counsel fees to enable
her to make a proper defense, as a condition precedent to
the right to further prosecute the action. This is a dif-
ferent question from that presented in this case, and the
rule announced is not in conflict with the doctrine of
*Hovey v. Elliott, supra.* In fact, in that case it is said
that such a question is not involved in the suit. Reed
voluntarily went into court and asked for relief; he owed
the duty of support to his wife, and it was depriving him
of no constitutional right to require him to perform that
duty as long as he was able to perform it. As pointed out
in the opinion, if he had been unable to comply with the

McNamara v. McNamara.

order, the court, no doubt, would have permitted him to proceed.

We cannot speculate here upon whether the defendant may succeed or fail in establishing his defense upon a new trial. The essential point is that he has been_ deprived of that which the constitution grants to him. As is well said in *Trough v. Trough*, 59 W. Va. 464: "The case involved the dearest rights of the defendant, wife, marriage rights, children, property, personal character, rights of person and property. What had the payment of this money as temporary alimony to do with the merits of the controversy touching those all important and inestimable rights?" With much earnestness and ability counsel insist that to hold that plaintiff in default of a pleading may be allowed to file the same upon compliance with an order of the court which he has theretofore disobeyed, and to hold that one in default of performance of an order of court is entitled to defend a suit against him, "is playing with logic and making courts a farce." But the ground for the first holding is usually, as in the *Bennett* case, based upon a statute, and the party in default has been accorded his constitutional right to appear and defend under proper regulations as to time and place, while, in the latter case, his constitutional right to defend is not afforded him. It would, no doubt, make proceedings in court more speedy and certain if a court could make and execute its own decrees without regard to constitutional limitations, but such an arbitrary assumption of power would be unwarranted, and would, no doubt, be strongly criticised by the eminent counsel for defendant. We are of opinion that the striking of defendant's answer from the files and the refusal to allow him to produce evidence in his own defense deprived him of a constitutional right and omitted from the proceedings. "an essential element of due process of law", and we are further of opinion that a judgment based upon such proceedings should be reversed.

As to the order for temporary alimony, we see no rea-

son for disturbing this.   It is the duty of defendant to support his wife and children; and, while the sum awarded seems large in view of the evidence produced upon the trial as to the value of defendant's property, its amount may be considered and taken into account if upon a full and final hearing the court should be convinced that a divorce and permanent alimony should be granted in the case.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.