## VIERECK v. UNITED STATES.
### No. 8578.

United States Court of Appeals.
District of Columbia.

Argued Dec. 8, 1943.

Decided Jan. 10, 1944.

848

George Sylvester Viereck was convicted for violations of the Foreign Agents Registration Act of 1938, § 1 et seq., as amended in 1939, 22 U.S.C.A. § 611 et seq., and he appeals.

See, also, 76 U.S.App.D.C. 262, 130 F. 2d 945; 318 U.S. 236, 63 S.Ct. 561.

Mr. John J. Wilson, of Washington, D. C., with whom Mr. Leo A. Rover, of Washington, D. C., was on the brief, for appellant.

Mr. George A. McNulty, Sp. Asst. to Atty. Gen., with whom Messrs. Tom C. Clark, Asst. Atty. Gen. and Albert E. Arent, Sp. Asst. to Atty. Gen., were on the brief, for appellee. Mr. Wendell Berge, Asst. Atty. Gen., also entered an appearance for appellee.

Before MILLER, Associate Justice, DOBIE,* Circuit Judge, and ARNOLD, Associate Justice.

DOBIE, Circuit Judge.

George Sylvester Viereck (hereinafter called Viereck) was convicted in the District Court of the United States for the District of Columbia for violations of the penal provisions of the Foreign Agent's Registration Act of June 8, 1938, 52 Stat. 631, as amended by the Act of August 7, 1939, 53 Stat. 1244, 22 U.S.C.A. § 611 et seq. (hereinafter called the Act.) The indictment contained six counts. Viereck, found guilty and sentenced under all six counts of the indictment, has duly appealed. Five questions, which we now proceed to discuss, are involved in this appeal.

* Sitting by assignment of the Chief Justice of the United States, pursuant to the provisions of the Act of December 29, 1942, 56 Stat. 1094, 28 U.S.C.A. § 17(b), entitled "An Act to amend the Judicial Code to authorize the Chief Justice of the United States to assign circuit judges to temporary duty in circuits other than their own."

(1) The Demurrer to Counts II, IV and VI of the Indictment.

■ It is first contended that the District Court erred in overruling Viereck's demurrer to the second, fourth and sixth counts of the indictment. These three counts (we are told) failed to charge a criminal offense within the purview of the Act. The counts in question charged that Viereck, as to three different supplemental Registration Statements, willfully failed to disclose certain activities on behalf of designated foreign principals in responses to Item 11, which called for a "Comprehensive statement of nature of business of registrant". The ground of demurrer, urged on us in this appeal, is that the Secretary of State had neither the power nor the authority to propound Item 11, even as to the activities of a registrant in his capacity as agent for a foreign principal. We believe that the power of the Secretary of State to propound Item 11, and to require answers thereto, under the penal sanctions of the Act, can be supported on three theories; the precise language of the Act, the legislative history of the Act, and the opinion of the Supreme Court on Viereck's former appeal.

Section 3 of the Act provides:

"Every person who has filed a registration statement required by section 2 shall, within thirty days after the expiration of each period of six months succeeding the first filing, file with the Secretary a statement, under oath, on a form prescribed by the Secretary, which shall set forth with respect to such preceding six months' period—

"(a) Such facts as may be necessary to make the information required under section 2 hereof accurate and current with respect to such period;

"(b) The amount and form of compensation received by such person for acting as agent for a foreign principal which has been received during such six months' period either directly or indirectly from any foreign principal; and

"(c) A statement containing such details required under this Act as the Secretary shall fix, of the activities of such person as agent of a foreign principal during such six months' period."

This is further reinforced by the provisions of Section 6 of the Act: "The Secretary is authorized and directed to prescribe such rules, regulations, and forms as may be necessary to carry out this Act."

If a purely analytical interpretation of these sections discloses any slight ambiguity (we think it does not), any such ambiguity should be quickly resolved against Viereck's first contention, if this language of the Act be interpreted in the light of both the manifest purpose of the Act and the necessities inherent in the practical enforcement of the Act. See United States v. American Trucking Ass'ns, 310 U.S. 534, 542, 60 S.Ct. 1059, 84 L.Ed. 1345; Southland Gasoline Co. v. Bayley, 319 U.S. 44, 47, 63 S.Ct. 917, 87 L.Ed. 1244.

The analytical interpretation of the Act seems to be strongly reinforced by the legislative history of the Act. Even a cursory reading of the resolutions and reports of Committees in both the House of Representatives and the Senate would seem to make quite clear the comprehensive extent to which Congress intended that agents of foreign principals must disclose the details of their activities in the field of political propaganda.

Any further lingering doubts here should be dispelled by the language of Chief Justice Stone in the Supreme Court's opinion in Viereck's former appeal. Viereck v. United States, 318 U.S. 236, 63 S.Ct. 561. Thus, at 318 U.S. at page 243, 63 S.Ct. at page 564, we find: "But treating item 11 of the Supplemental Registration Statement ('Comprehensive statement of nature of business of registrant'), prescribed by the Secretary, as a regulation fixing the details of the registrant's activities which he is required to state, it must either be taken as limited to a statement of his activities as agent to which § 3(c) alone refers, or to exceed the authority conferred upon the Secretary by that section. In neither case does the statute command, or authorize the Secretary to command, registrants to make any statement of their activities other than those in which they have engaged 'as agent'."

And, again, at 318 U.S. at page 241, 63 S.Ct. at page 563: "The Act of 1938 requiring registration of agents for foreign principals was a new type of legislation adopted in the critical period before the outbreak of the war. The general purpose of the legislation was to identify agents of foreign principals who might engage in subversive acts or in spreading foreign propaganda, and to require them to make public record of the nature of their employ-

ment. But the means adopted to accomplish that end are defined by the statute itself, which, as will presently appear more in detail, followed the recommendations of a House Committee which had investigated foreign propaganda. These means included the requirement of registration of agents for foreign principals—with which it appears that petitioner complied—and the requirement that the registrant give certain information concerning his activities as such agent."

While, at 318 U.S. at page 242, 63 S.Ct. at page 564, it was said: "The requirement of this section (3(c) of the Act) is subject to two limitations. One is that the statement is to be of such details of the registrant's activities 'as the Secretary shall fix'; the other is that the details are to be of activities of the registrant 'as agent of a foreign principal'."

Since the answers required from Viereck under Item 11 related to his activities as "agent of a foreign principal", we think the Supreme Court clearly implied that, as so limited, Item 11 was well within the power and authority of the Secretary of State under the Act.

### (2) Alleged Errors in the Admission of Evidence.

We next consider three alleged errors in the rulings of the District Court permitting the introduction of evidence which is alleged by Viereck to be inadmissible.

■ Objection was made to evidence (particularly the testimony of Dr. Schwarz) showing that in 1933 and 1934 Viereck acted as a (behind-the-scenes) paid consultant of the German Consul in New York, for the purpose of influencing American public opinion in favor of the Hitler regime in Germany. We think this evidence was clearly admissible.

Testimony that Viereck was in the employment of the German Government in 1933 and 1934 tended to show that Viereck was acting for the same foreign principal at the times charged in the instant indictment. See Riverside Fibre & Paper Co. v. O. C. Keckley Co., 7 Cir., 32 F.2d 23, 26; Kent v. Addicks, 3 Cir., 126 F.2d 112, 116, certiorari denied 192 U.S. 607, 24 S.Ct. 851, 48 L.Ed. 585. Certainly this same evidence had some relevancy on the issue of whether the omissions charged against Viereck were willful and deliberate. See Moore v. United States, 150 U.S. 57,

60, 61, 14 S.Ct. 26, 37 L.Ed. 996; Debs v. United States, 249 U.S. 211, 215, 39 S.Ct. 252, 63 L.Ed. 566; Standard Oil Co. v. United States, 221 U.S. 1, 46, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas.1912D, 734; Glasser v. United States, 315 U.S. 60, 65, 81, 62 S.Ct. 457, 86 L.Ed. 680. Matters of this kind must rest largely in the discretion of the trial judge. See Alexander v. United States, 138 U.S. 353, 357, 11 S.Ct. 350, 34 L.Ed. 954; Clune v. United States, 159 U.S. 590, 592, 16 S.Ct. 125, 40 L.Ed. 269. The length of the time interval in cases of this kind between the acts proved and the acts charged, affects the weight, rather than the admissibility, of the evidence. Holt v. United States, 6 Cir., 42 F.2d 103, 106. See, also, Packer v. United States, 2 Cir., 106 F. 906, 909. In Viereck's first trial, his book "Spreading Germs of Hate" (published in 1930) was admitted as relevant on the issue of willfulness, and that ruling was approved by this Court. Viereck v. United States, 76 U.S.App.D.C. 262, 130 F.2d 945, 959, 960, reversed on other grounds 318 U.S. 236, 63 S.Ct. 561.

■ Even less merit, we think, has Viereck's objection to the admission of the evidence of Miss Anne Spardel (hereinafter called Spardel) as to the contents of certain letters concerning Viereck's demands for increased compensation, which passed between the German Consul General in New York and the German Charge d'Affaires in Washington. Over objection under the best evidence rule, the trial judge took judicial notice of the inviolability of diplomatic correspondence and the fact that a state of war existed between Germany and the United States. We approve this admission of secondary evidence of the contents of the letter without a showing that the primary evidence, the letters themselves, was unavailable. It is hard for even a fertile imagination to conjure up so futile a gesture, under the circumstances, as a demand by the United States upon Germany for the production of these letters. By comparison, the proverbially fatuous tasks of gilding the lily, tinting the rose and burning daylight assume a position of intense practical utility. See In re Dillon, 7 Fed.Cas. No. 3,914; O'Shea v. United States, 6 Cir., 93 F.2d 169, 171; Bennett v. Bennett, 208 U.S. 505, 512, 28 S.Ct. 356, 52 L.Ed. 590. And see Rule 602 of the Model Code of Evidence of the American Law Institute.

■ This same witness, Spardel, was permitted to testify that a weekly report admittedly prepared by Viereck was similar (as to size, type, paper, spacing and other physical aspects) to documents she had often seen on the desk of Dr. Borchers, the German Consul General. Objection was made to the introduction of this testimony on the ground that it created an unfair prejudice against Viereck in the minds of the jurors and that it was improper "to permit the witness to speculate as to the identity of the document upon Dr. Borchers' desk, and then to permit the jury to speculate upon the witness's speculation." A cautionary instruction to the jury as to this testimony was carefully given by the trial judge. There was, we think, no prejudicial error in thus admitting the testimony and leaving the jury to evalue its force and weight, if any. See Holmes v. Goldsmith, 147 U.S. 150, 164, 13 S.Ct. 288, 37 L.Ed. 118; Moore v. United States, 150 U.S. 57, 14 S.Ct. 26, 37 L.Ed. 996; Ahearn v. United States, 2 Cir., 158 F. 606; Roberts v. United States, 4 Cir., 60 F.2d 871, 872; Mutual Life Ins. Co. v. Sayre, 3 Cir., 79 F.2d 937, 940; State v. McGee, 336 Mo. 1082, 1099, 83 S.W.2d 98, 108; Wigmore on Evidence, (3rd Ed. 1940) §§ 32, 36.

If, perchance, there was error in one or more of the trial court's rulings on evidence which we have just discussed (which we emphatically deny), we still feel, under the record in this case, that any such error was non-prejudicial and so inconsequential that in no event would it justify a reversal at our hands of the judgment below.

(3) The Constitutional Privilege against Self-Incrimination.

■ The final (and, according to Viereck's counsel, the most crucial) point in this case involves the privilege, under the Constitution of the United States, 5th Amendment, against self-incrimination.

Shortly before the first indictment against Viereck, he was brought before a Grand Jury and interrogated by a Government Prosecutor. Viereck claimed, and was allowed, his constitutional privilege against self-incrimination. A like privilege was claimed by Viereck and allowed when (after he was first indicted but before he was first tried) he was subpoenaed to testify in the trial of one George Hill for perjury. Had Viereck consistently maintained this course of conduct, he would have been completely protected, for no questions concerning, and no comment upon, his election not to testify, would have been permitted.

At his second trial (which we are now reviewing), however, Viereck voluntarily (under no compulsion whatever) took the stand in his own defense. On direct examination he testified voluminously and at great length on the activities upon which the criminal charges against him were based. The clear burden of this evidential song (and the manifest impression which he sought to convey to the jury) was that his life as a political propagandist was an open book for him who runs to read, that Viereck had nothing whatever that he either needed to hide or even wished to conceal.

The Government was then permitted, through questions directed to Viereck on cross-examination, to develop before the jury that Viereck, on the two previous occasions mentioned above, had refused to testify (concerning the matters about which he had so freely and so glibly testified at his own trial) upon the ground that his testimony might tend to incriminate him. The avowed purpose of the Government was to attack Viereck's credibility by showing manifest inconsistencies in the illusion Viereck sought to create as to his willingness to tell fully and frankly all that he himself knew. Counsel for Viereck insisted on oral argument that the effect of this cross-examination was devastating to Viereck's chances of acquittal. We can well imagine that it was.

Yet, in principle, we find, in the Government's conduct here, no violation of Viereck's constitutional privilege. He cannot blow hot and cold, he cannot ride both sides of the sapling. The constitutional safeguards were waived and vanished when Viereck voluntarily took the stand as a witness in his own behalf. He is then in no position to claim the benefits of a witness without bearing the burdens imposed upon a witness.

Certainly the current of federal authority runs very strongly here against Viereck. See Raffel v. United States, (a leading case), 271 U.S. 494, 497–499, 46 S.Ct. 566, 70 L.Ed. 1054; Tomlinson v. United States, 68 App.D.C. 106, 93 F.2d 652, 656, 114 A.L.R. 1315, certiorari denied 303 U.S. 646, 58 S.Ct. 645, 82 L.Ed. 1102; United States v. Buckner, 2 Cir., 108 F.2d 921, 929, certiorari denied 309 U.S. 669, 60 S.Ct. 613, 84 L.Ed. 1016; United States v.

Mortimer, 2 Cir., 118 F.2d 266, 268, certiorari denied 314 U.S. 616, 62 S.Ct. 58, 86 L.Ed. 496; Groves v. United States, 2 Cir., 122 F.2d 87, 91, certiorari denied 314 U.S. 670, 62 S.Ct. 135, 86 L.Ed. 536; United States v. Klinger, 2 Cir., 136 F.2d 677, 678, certiorari denied 64 S.Ct. 48, October 10, 1943. Against the precise and specific holdings in these cases, the general language used in the two cases cited in the brief of Viereck's counsel (Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, and Wood v. United States, 75 U.S.App.D.C., 274, 128 F.2d 265, 141 A.L.R. 1318) affords very slender support for Viereck's constitutional contention.

In the Raffel case, supra [271 U.S. 494, 46 S.Ct. 568, 70 L.Ed. 1054], the Supreme Court used no weasel words but sweepingly declared: "The safeguards against self-incrimination are for the benefit of those who do not wish to become witnesses in their own behalf, and not for those who do. There is a sound policy in requiring the accused who offers himself as a witness to do so without reservation, as does any other witness. We can discern nothing in the policy of the law against self-incrimination which would require the extension of immunity to any trial, or to any tribunal, other than that in which the defendant preserves it by refusing to testify."

Words of equal potency and power were employed in the opinions written in the other cases cited above.

The vigorous attempts of counsel for Viereck to distinguish these cases fail to impress us. We are told: "In the case at bar, the appellant had no choice as to his previous appearance. He was actually entrapped by the prosecution to provide evidence against himself in his forthcoming trial, either in the form of admissions or of refusals to answer."

Viereck was neither "victimized" nor "entrapped"—for these be harsh words. The constitutional provision as to self-incrimination contains no absolute pro-hibition; it merely sets up a privilege (with the advantages and burdens thereunto appertaining) which one accused of crime may, or may not, claim. And, if he acts intelligently, he carefully weighs the advantages and the burdens, before he elects whether he will or will not claim the privilege. But he cannot (as Viereck here seeks to do) waive the privilege, by taking the stand and securing the supposed advantage of testifying, and then avert the burden of proper cross-examination.

There was no impropriety on the part of the Government in bringing Viereck before the Grand Jury. This is equally true as to his being subpoenaed as a witness in the trial of Hill. Nor was there any impropriety when Viereck (as he did on both of these occasions) refused to testify under his constitutional privilege. Probably, as his counsel asserts, he was on the horns of an embarrassing dilemma. It does not follow, however, that he was thereby deprived of any right under the Constitution of the United States. The argument that the choice (to testify or not) places one under pressure to testify under the fear of the consequences of silence should he elect to testify in a later proceeding, was considered and rejected by the Supreme Court in the Raffel case. Nor can we go along with the contention of Viereck's counsel that Raffel "creates his own predicament", while Viereck has an unconstitutional predicament rudely thrust upon him.

Finally, we are of the opinion that Viereck was properly convicted and sentenced after a fair trial. We might note, too, that support for some of the views above expressed will be found in the opinion of this court written by Justice Vinson, when Viereck's appeal from his first conviction was before this Court. 76 U.S.App.D.C. 262, 130 F.2d 945.

The judgment of the District Court is affirmed.

Affirmed.